**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIJA ANDESILIC and PASSION LOWE, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>NEWELL BRANDS INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>  1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>  2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>  3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>  4. BREACH OF WARRANTY<br>  5. UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMAND** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................................ 1

II.   JURISDICTION ....................................................................................... 11

III.  VENUE .................................................................................................... 11

IV.   PARTIES.................................................................................................. 11

  A.   Plaintiffs ......................................................................................... 11

  B.   Defendant ....................................................................................... 15

V.    FACTUAL ALLEGATIONS.................................................................... 16

  A.   Microplastics Harm Human Health........................................... 16

  B.   The Products Are Made of Polypropylene Plastic and Are Heated and
       Frozen Through Ordinary Use ................................................... 22

  C.   The Affirmative Misrepresentations and Material Omission Mislead
       Reasonable Consumers About the Products' Safety and Conceal the
       Presence of Harmful Microplastics ........................................... 26

  D.   Plaintiffs and Reasonable Consumers Were Misled by the Affirmative
       Misrepresentations and Material Omission into Buying the Products...28

  E.   The Products are Substantially Similar.................................... 33

  F.   No Adequate Remedy at Law ..................................................... 34

VI.   CLASS ACTION ALLEGATIONS......................................................... 37

VII.  CAUSES OF ACTION ........................................................................... 40

COUNT ONE ...................................................................................................... 40

      "Unfair" Prong........................................................................... 43

      "Fraudulent" Prong................................................................... 46

      "Unlawful" Prong ...................................................................... 47

COUNT TWO ..................................................................................................... 49

COUNT THREE ................................................................................................. 51

COUNT FOUR ................................................................................................... 54

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

COUNT FIVE ................................................................................................. 57

VIII. PRAYER FOR RELIEF............................................................................ 58

IX.   DEMAND FOR JURY TRIAL .................................................................. 59

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COMPLAINT

1.      Plaintiffs Passion Lowe and Marija Andesilic ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), bring this class action complaint against Defendant Newell Brands Inc. ("**Defendant**" or "**Newell**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.      Defendant labels and markets its Rubbermaid TakeAlongs Food Storage Containers (the "**Products**") as "Microwave Safe," "Microwave Reheatable," and "Freezer Safe," leading reasonable consumers to believe the Products can be safely used in microwaves and freezers. In truth, they are not "safe" for such purposes. That's because Defendant makes the Products out of polypropylene plastic, which releases harmful microplastics directly into food when microwaved or frozen— dangerous outcomes that are contrary to the explicit safety claims.

3.      As a result of Defendant falsely promising safety, while also failing to disclose the Products release microplastics when exposed to heat or freezing, consumers are unknowingly ingesting dangerous microplastics, exposing themselves and their families to significant health risks through the very uses Defendant promises are safe.

4.      By promoting the Products as affirmatively safe while concealing these material risks, Defendant has duped consumers nationwide out of millions of dollars, placing their health and welfare in jeopardy. Sadly, this also includes millions of families specifically targeted for purportedly safe on-the-go school and work meals, and vulnerable children for whom ingesting microplastics is especially dangerous.

5.      **The "Microwave Safe," "Microwave Reheatable," and "Freezer Safe" Claims Lull Consumers into False Sense of Security.** Beyond the reasonable expectation that food storage products are safe for common kitchen use, consumers

CLASS ACTION COMPLAINT

are further deceived and misled by Defendant's "Microwave Safe," "Microwave Reheatable," and "Freezer Safe" claims prominently displayed on the Products' labels ("**Affirmative Misrepresentations**").

6.    The "Microwave Safe" and "Microwave Reheatable" representations convey to consumers that the Products can be safely heated in a microwave. But these claims are false. When microwaved, the Products release harmful microplastics directly into the food contained inside. Research shows that microwave heating causes the highest microplastic release from plastic food containers made of polypropylene in daily usage scenarios, releasing as many as 4.22 million microplastic and 2.11 billion nanoplastic particles from *only one square centimeter* of plastic area within just three minutes.

7.    These tiny particles have toxic effects on human health. Studies show they can alter the composition of gut microbiota, which plays a crucial role in proper digestion, nutrient absorption, and immune system development. Microplastics also produce a toxic effect on the digestive track, causing irreversible changes in the reproductive axis and central nervous system of offspring after prenatal and neonatal exposure, affect the immune system due to their physiochemical properties, and can cause chronic pulmonary disease. Studies have even shown that people with carotid artery plaque in which microplastics were detected had a higher risk of a composite myocardial infarction, stroke, or death from any cause.

8.    Against this backdrop, no reasonable consumer would equate "safe," as Defendant promises, with the direct ingestion of unnecessary toxic materials when the Products are used as directed.

9.    Defendant's "Freezer Safe" promise is also dangerously false. Freezing alters the physical properties of the Products due to their polypropylene composition, making them brittle and prone to fragmentation. This weakened structure increases the Product's susceptibility to further degradation, especially when subjected to reheating as Defendant also irresponsibly directs. Studies demonstrate that even under

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

refrigeration or room temperature—without any external stress like microwaving—polypropylene containers can release thousands of microplastics and millions of nanoplastics per square centimeter of surface area. Freezing exacerbates this issue, and these risks are further amplified when combined with reheating—particularly microwaving, which has been shown to release the highest levels of microplastics.

10.     Given that Defendant markets the Products as reusable, as a core product attribute, it also is foreseeable that containers may undergo multiple freeze-thaw and reheat cycles. The "Freezer Safe" claim thus falsely conveys that the Products are safe for such use, even though in truth it results in the direct ingestion of toxic microplastics. It is likewise foreseeable that consumers will use the same "Freezer Safe" container to reheat food, especially because the packaging also declares "Microwave Safe" and "Microwave Reheatable." By affirmatively marketing the Products as "safe" for freezer use when they are not—while also failing to disclose the associated microplastic risks—Defendant misleads consumers into believing the Products are free from such hazards, thereby putting the health of families nationwide at risk and causing monetary harm by failing to deliver promised product attributes.

11.     **Material Danger and Material Omission.** While prominently making the Affirmative Misrepresentations, Defendant simultaneously withholds critical information from consumers: when the Products are used as intended—heated in a microwave or stored in a freezer—they leach harmful microplastics directly into food contained inside, posing serious health risks, including to the human body's core digestive, immune, and reproductive systems (the "**Material Omission**"). This omission further misleads reasonable consumers to believe the Products are safe to use as directed, when in truth they are not.

12.     Despite being aware of these risks, Defendant provides no warning or disclosure to consumers about the release of toxic microplastics when the Products are used as advertised. By failing to clearly and conspicuously inform consumers of the health dangers associated with the Products (the "**Material Danger**")—

particularly on the front packaging and labels where it affirmatively promises "safety," Defendant has breached its legal duties and misled consumers in violation of consumer protection and other law.

13. **Consumer Expectation of Safe Products in the Marketplace.** Consumers reasonably expect that products sold in the marketplace are safe for their intended use especially where, as here, that's what the label affirmatively promises. Consumers further rely on manufacturers to provide clear warnings if a product fails to meet this basic expectation of safety. They expect manufacturers to exercise diligence in ensuring that their products do not expose consumers to harm or, at a minimum, to provide clear warnings when products present significant health risks.

14. These expectations are heightened when the products are intended for use in food storage and preparation, practices critical to millions of families nationwide. Defendant exploits these expectations by affirmatively promising safety while concealing the Material Danger—that its Rubbermaid food storage containers release harmful microplastics directly into food when the Products are heated, microwaved, and frozen.

15. **The Products Are Represented as and Reasonably Expected to Be Safe.** By labeling the Products as "safe" for microwave and freezer use, Defendant misleads consumers into believing they are free of risks associated with food storage and preparation as directed. Consumers rightfully expect that products designed for food storage and marketed with the Affirmative Misrepresentations will not leach harmful substances and chemicals directly into their food when used for the purposes advertised. This expectation is reasonable, as consumers rely on such products to safely store and heat the food they and their families consume.

16. Ensuring that food storage products do not expose consumers, and their families, to harm is a top concern when making purchasing decisions, as is mitigating unnecessary exposure to harmful microplastics. This is especially so in light of mounting evidence further linking microplastics to serious health risks and, as a

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

result, experts advising consumers to avoid them wherever possible to reduce the risk of serious harm.

17.    The Product's Affirmative Misrepresentations of safety, together with Rubbermaid's widespread recognition as a leading brand, amplifies consumer trust in the safety of the Products. By leaching harmful microplastics directly into food when heated and frozen as advertised and intended for ordinary use, the Products fail to meet consumers' reasonable expectation that they are safe and free from the Material Danger.

18.    **The Deception of the Affirmative Misrepresentations in the Unlawful Advertising and Sale of the Products.** Defendant's deceptive conduct misleads reasonable consumers, including Plaintiffs, through both the Affirmative Misrepresentations and Material Omission. Defendant affirmatively promises that the Products are "Microwave Safe," "Microwave Reheatable," and "Freezer Safe," leading consumers to believe they can be safely heated and frozen. At the same time, Defendant omits material information that the Products release harmful microplastics directly into food when the Products are heated and frozen as intended and instructed during ordinary use. Both acts of deception mislead consumers into believing the Products are safe, as promised, to use as directed and free from such risks. This deception causes consumers to pay a premium for perceived product quality and promised safety attributes that Defendant fails to deliver. Defendant's Affirmative Misrepresentations and Material Omission are therefore both misleading and unlawful.

19.    **The Products.** The Products at issue are Rubbermaid TakeAlongs Food Storage Containers sold to consumers in the United States and the state of California, that contain the "Microwave Safe" representation, the "Microwave Reheatable" representation, the "Freezer Safe" representation, and Material Omission on their labels and/or packaging, in all sizes, variations, packs, sets, and bundles (collectively

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

referred to herein and throughout this complaint as the "**Products**"). The Products include, but are not necessarily limited to, the following:

    a.    *TakeAlongs® Medium Square Food Storage Containers*

        (1)    4 Piece - 7C

        (2)    8 Piece – 2.9C

        (3)    8 Piece – 5.2C

    b.    *TakeAlongs® Serving Bowl Food Storage Containers, 15.7 Cup, 2 Count*

    c.    *TakeAlongs® Large Rectangular Food Storage Containers, 4 Piece, 1 Gallon*

    d.    *TakeAlongs® Bowl Food Storage Containers*

        (1)    6 Piece, 5C

        (2)    8 Piece, 3.2 C

    e.    *TakeAlongs® Medium Rectangular Food Storage Containers*

        (1)    4 Piece, 8C

        (2)    6 Piece, 4C

    f.    *TakeAlongs® Food Storage and Meal Prep Container Set*

        (1)    Assorted, 60 Piece

        (2)    Black, 30 Piece

    g.    *TakeAlongs® Food Storage Container Set*

        (1)    20 Piece

        (2)    24 Piece

        (3)    40 Piece

        (4)    64 Piece

        (5)    16 Piece

    h.    *TakeAlongs® Food Storage 4.7 Cup Divided Containers, Meal Prep*

        (1)    Black, 16 Piece, 4.7C

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

1          (2)      Black, 2 Piece, 4.7C

2          (3)      Black, 8 Piece, 4.7C

3          (4)      Assorted, 16 Piece, 4.7C Divided

4     i.   *TakeAlongs® Twist & Seal, Ruby*

5     j.   *TakeAlongs® Twist & Seal Food Storage Containers*

6          (1)      Teal Splash, 6 Piece, 1.6C

7          (2)      Marine Blue, 4 Piece, 2.1C

8          (3)      Red, 6 Piece, 1.6C

9          (4)      Red, 6 Piece, 2.1C

10         (5)      Red, 4 Piece, 3.5C

11    k.   *TakeAlongs® Food Storage 2.9 Cup Square Containers, Meal*

12         *Prep*

13         (1)      Teal Splash, 8 Piece, 2.9C

14    l.   *TakeAlongs® Food Storage 3.7 Cup Divided Containers, Meal*

15         *Prep*

16         (1)      Black, 10 Piece, 3.7C

17         (2)      Black, 20 Piece, 3.7C

18         (3)      Red, 6 Piece, 3.7C

19         (4)      Teal Splash, 6 Piece, 3.7C

20    m.   *TakeAlongs® Food Storage 5 Cup Containers, Meal Prep*

21         (1)      16 Piece, 5C

22         (2)      8 Piece, 5C

23    n.   *TakeAlongs® Large Square Food Storage Containers, Set of 2*

24    o.   *TakeAlongs® Small Square Food Storage Containers*

25         20.   Below are fair and accurate depictions of the representative samples of

26    the Products' front labels, taken from Defendant's official website, evidencing the

27    Affirmative Misrepresentations together with the Material Omission:

28    *//*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

7

CLASS ACTION COMPLAINT

**TakeAlongs® Medium Square Food Storage Containers**



16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## TakeAlongs® Food Storage Container Set



CLASS ACTION COMPLAINT

**TakeAlongs® Food Storage 4.7 Cup Divided Containers, Meal Prep**



21.     **Primary Dual Objectives.** Plaintiffs bring this action individually and on behalf of similarly situated consumers who purchased the Products during the relevant Class Period, with two primary objectives. ***One***, Plaintiffs seek on Plaintiffs' individual behalf, and on behalf of the Class/Subclass, a monetary recovery for the price premium they have overpaid for Products as a result of Defendant's Affirmative Misrepresentations and Material Omission, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiffs seek on Plaintiffs' individual behalf, and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Affirmative Misrepresentations and the Material Omission to avoid or mitigate the risk of deceiving the public into believing that the Products are "safe" as promised and do not pose the Material Danger, by requiring Defendant to change

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

its business practices, which may include one or more of the following: removal or modification to the Affirmative Misrepresentations; disclosure of the Material Omission on the Products' labels and/or packaging; disclosure of the Material Omission in the Products' advertising; modification of the Products so that they no longer pose a risk of the Material Danger; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.    JURISDICTION

22.    This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.    VENUE

23.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, Plaintiff Andesilic, as detailed below, purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## IV.    PARTIES

### A.    Plaintiffs

24.    **Plaintiff Marija Andesilic.** The following is alleged based upon Plaintiff Andesilic's personal knowledge:

    a.    **Residence.** Plaintiff Andesilic is a resident of Los Angeles County, in the State of California.

    b.    **Purchase Details.** In or around October 2023, Plaintiff Andesilic purchased Rubbermaid TakeAlongs food containers at a Ralph's store in the County of Los Angeles for approximately $20.00 (the "**Andesilic Purchased Products**").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

c. **Reliance on Affirmative Misrepresentations and Material Omission**. When making her purchase, Plaintiff Andesilic read and relied upon the Affirmative Misrepresentations and the Material Omission on the Product's label or packaging. The Affirmative Misrepresentations and the Material Omissionled her to believe that the Product was safe and capable of heating food and food storage in a freezer without posing the risk of the Material Danger.

d. **No Actual Knowledge of Falsity.** At the time of her purchase, Plaintiff Andesilic was unaware that the Product posed the risk of the Material Danger—i.e., that the Product could leach microplastics when used as is ordinarily expected.

e. **No Notice of Contradictions.** Plaintiff Andesilic did not observe any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that disclosed or suggested that the Product leaches microplastics when microwaved or frozen as instructed.

f. **Causation/Damages.** But for the Affirmative Misrepresentations and the Material Omission—i.e., that the Product carries a substantial risk of releasing microplastics when heated or frozen during ordinary use—Plaintiff Andesilic would not have purchased the Product or would not have paid as much for it.

g. **Desire to Repurchase.** Plaintiff Andesilic regularly visits stores where Defendant's Products are sold, continues to see the Products available for purchase and intends to purchase the Products again in the future if she can be sure that the Products are safe for their central purpose (i.e., if the Products did not pose a risk of the Material Danger). But absent injunctive relief, Plaintiff Andesilic cannot now or in the future rely on the Products' labels because she cannot know whether they remain deceptive, and she may reasonably, but incorrectly, assume the Products were improved or otherwise changed to be safe and compatible with their central food storage purpose. Plaintiff Andesilic is an average consumer who is not sophisticated in the knowledge of plastic composition or in the manufacturing, composition, and formulation of food storage products, like the Products. An injunction requiring the removal of the Affirmative Misrepresentations and the disclosure of the Material Danger unless the safety risk was eliminated or otherwise prohibiting the use of a materially false and misleading label would enable Plaintiff Andesilic

to rely confidently on the labels in making his future purchase decisions. Absent injunctive relief, Plaintiff Andesilic and other reasonable consumers would have no way of assessing the safety of the Products based solely on their packaging, which does not disclose that the material releases microplastics upon regular everyday use.

25.    **Plaintiff Passion Lowe.** The following is alleged based upon Plaintiff Passion Lowe's personal knowledge:

a.    **Residence.** Plaintiff Lowe is a resident of the County of San Diego, in the State of California.

b.    **Purchase Details.** In or around late 2022, Plaintiff Lowe purchased Rubbermaid TakeAlongs Meal Prep food containers from a Walmart store in the County of San Diego for approximately $15.00 to $20.00 (the "**Lowe Purchased Products**").

c.    **Reliance on Affirmative Misrepresentations and Material Omission**. When making her purchase, Plaintiff Lowe read and relied upon the Affirmative Misrepresentations and the Material Omission on the Product's label or packaging. The Affirmative Misrepresentations and the Material Omission led her to believe that the Product was safe and capable of heating food and food storage in a freezer without posing the risk of the Material Danger.

d.    **No Actual Knowledge of Falsity.** At the time of her purchase, Plaintiff Lowe was unaware that the Product posed the risk of the Material Danger—i.e., that the Product leaches toxic microplastics directly into food when used for the purposes that Defendant promises are "safe.".

e.    **No Notice of Contradictions.** Plaintiff Lowe did not observe any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that disclosed or suggested that the Product leaches toxic microplastics directly into food when microwaved or frozen as instructed.

f.    **Causation/Damages.** But for the Affirmative Misrepresentations and Material Omission—Plaintiff Lowe would not have purchased the Product or would not have paid as much for it.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

g.  **Desire to Repurchase.** Plaintiff Lowe regularly visits stores where Defendant's Products are sold, continues to see the Products available for purchase and intends to purchase the Products again in the future if she can be sure that the Products are "safe" for microwave and freezer use as advertised. But absent injunctive relief, Plaintiff Lowe cannot now or in the future rely on the Products' labels because she cannot know whether they remain deceptive, and she may reasonably, but incorrectly, assume the Products were improved or otherwise changed to be safe consistent with Defendant's currently false representations and otherwise compatible with their central purpose of food storage, heating, and freezing. Plaintiff Lowe is an average consumer who is not sophisticated in the knowledge of plastic composition or in the manufacturing, composition, and formulation of food storage products, like the Products. An injunction requiring the removal of the Affirmative Misrepresentations and the disclosure of the Material Danger unless those claims were true or otherwise prohibiting the use of a materially false and misleading label would enable Plaintiff Lowe to rely confidently on the labels in making his future purchase decisions. Absent injunctive relief, Plaintiff Lowe and other reasonable consumers would have no way of assessing the safety of the Products based solely on their packaging, which does not disclose that the material releases toxic microplastics directly into food when used for purposes that Defendant promises are "safe."

26.  **Plaintiffs' Future Harm.** Defendant continues to market and sell the Products with both the Affirmative Misrepresentations and the Material Omission, creating an ongoing harm to consumers. As average consumers without specialized knowledge of plastic composition, including the properties of polypropylene used in the Products, Plaintiffs are particularly vulnerable to this deceptive practice. Despite Plaintiffs' desire to purchase the Products again, there is a substantial risk of future injury due to Plaintiffs' reasonable but incorrect belief that the Products are safe. Given Defendant's continued marketing of the Products as "Microwave Safe," "Microwave Reheatable," and "Freezer Safe" without disclosing the Material Danger, Plaintiffs are likely to believe that the Products have been reformulated to address this safety issue. This mistaken belief, reinforced by Defendant's ongoing misrepresentations and omissions, would lead Plaintiffs to purchase the Products

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

again, exposing them to the same harm they initially experienced. Plaintiffs' lack of expertise in plastic composition prevents them from independently verifying whether the Products have been modified to eliminate the risk of microplastic leaching. As a result, Plaintiffs and other reasonable consumers continue to be deprived of the ability to make fully informed purchasing decisions regarding the Products despite their desire to purchase them again. Without injunctive relief, consumers have no way of assessing the Products' safety based on the packaging. The Products do not clearly disclose their material composition, and even if they did, consumers would still be unable to determine whether those materials release harmful microplastics when used for the purposes that Defendant promises are "safe."

**B.    Defendant**

27.    **Defendant Newell Brands Inc.** is a corporation organized under the laws of Delaware with its principal place of business in Atlanta, Georgia. Defendant was doing business in the State of California at all relevant times. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and/or distributor of the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States, including the State of California. The unfair, unlawful, deceptive, and misleading Affirmative Misrepresentations and Material Omission on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California into purchasing the Products. Additionally, Defendant knew of the falsity of the Affirmative Misrepresentations and Material Omission, but it failed to correct those misrepresentations or disclose the Material Danger at the time Plaintiffs and all Class Members purchased the Products, notwithstanding its duty to do so and otherwise comply with consumer protection laws. Further, Defendant had the right and authority, at all relevant times, to not make the Affirmative Misrepresentations and/or disclose the Material Omission, including

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the time leading up to and through the incident giving rise to the claims asserted (including, Plaintiffs' purchases described above, in addition to all Class Members' purchases).

## V.   FACTUAL ALLEGATIONS

### A.   Microplastics Harm Human Health

28.   Microplastics are small plastic particles less than 5 millimeters in diameter that form when solid plastics break down through abrasion, degradation, or chemical processes such as exposure to heat.[1] These tiny particles can have significant adverse effects on human health.[2] Studies show that microplastics alter the composition of gut microbiota, which play a crucial role in digestion, nutrient absorption, and immune system development.[3] Furthermore, microplastics "produc[e] a toxic effect on the digestive tract," that cause irreversible changes in the reproductive axis and central nervous system of offspring after prenatal and neonatal exposure, affect the immune system due to their physicochemical properties, and can cause chronic pulmonary disease.[4]

//

---

[1] *See* Sumon Sarkar et al., *Microplastic Pollution: Chemical Characterization and Impact on Wildlife*, 20(3) INT. J. ENVIRON. RES. PUBLIC HEALTH 1745 (2023).

[2] *See* Raffaele Marfella et al., *Microplastics and Nanoplastics in Atheromas and Cardiovascular Events*, 390 NEW ENGLAND J. MED. 900 (Mar. 6, 2024), https://www.nejm.org/doi/full/10.1056/NEJMoa2309822 (concluding that "patients with carotid artery plaque in which [microplastics and nanoplastics (MNPs)] were detected had a higher risk of a composite of myocardial infarction, stroke, or death from any cause at 34 months of follow-up than those in whom MNPs were not detected").

[3] *See* Alba Tamargo et al., *PET Microplastics Affect Human Gut Microbiota Communities During Simulated Gastrointestinal Digestion, First Evidence of Plausible Polymer Biodegradation During Human Digestion*, Nature (Jan. 11, 2022), https://doi.org/10.1038/s41598-021-04489-w ("The work presented here indicates that microplastics are indeed capable of digestive-level health effects.").

[4] Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence*, MDPI (Oct. 10, 2022), .

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

29.    Even in vitro experiments using human cells and in vivo studies conducted on mice have indicated that microplastics can trigger a range of adverse health effects.[5] These include inflammation, oxidative stress resulting from increased production of reactive oxygen species, disturbances in lipid metabolism, imbalances in the gut microbiota, and neurotoxicity.[6] Furthermore, microplastic exposure in laboratory animals has been linked to immunological responses, endocrine disruption, and alterations in energy metabolism.[7]

30.    Microplastics have been found in blood, saliva, liver, kidneys, and even the placenta, which highlights their ability to translocate within the body.[8] Notably, nanoplastics, the smallest fraction of these pollutants, have been shown to enter cells and even penetrate the cell nucleus, which raises concerns about potential intracellular damage.[9] Research connects microplastic exposure and serious health issues such as cancer, reproductive problems, lung and liver effects, and disruptions in hormone metabolism.[10]

//

---

[5] Yongjin Lee et al., *In Vitro Experiments With Human Gut Microbiota Reveal Changes in Bacterial Composition, Gut Microbiota Dysbiosis, and Neurotoxicity*, National Library of Medicine (May 3, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10151227/.

[6] *Id.*

[7] Junyi Wu et al., *Effects of Endocrine-Disrupting Chemicals on Gut Microbiota and Their Impact on Gut-Related Diseases*, Frontiers (Aug. 12, 2021), https://www.frontiersin.org/articles/10.3389/fendo.2021.724989/full.

[8] Andrew Thurston, *Microplastics Everywhere*, Harvard Medicine: The Magazine of Harvard Medical School, https://magazine.hms.harvard.edu/articles/microplastics-everywhere (last visited Apr. 22, 2025).

[9] Joe Myers & Madeleine North, *How Microplastics Get into the Food Chain*, World Economic Forum (Feb. 19, 2025), https://www.weforum.org/stories/2025/02/how-microplastics-get-into-the-food-chain/.

[10] *See* Jiaqi Shi et al., *The Impact of Microplastic Exposure on Gastrointestinal Tract Cancers: A Comprehensive Review*, 16 CANCERS 3703 (2024), https://www.mdpi.com/2072-6694/16/21/3703.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

31.   Given that the Products are intended and advertised to be used by families on daily basis, they pose serious safety risks not only to the adult members but also children. This is especially concerning as scientists studying microplastics have emphasized microplastics can be especially dangerous to children and that "enacting solid legislative laws and policies to manage the excessive use of plastic products is crucial; otherwise, the health of ecosystems and living organisms will inevitably deteriorate in the coming years. […] We feel that the government and industries must exert the most significant effort to protect children from MPs [microplastics] exposure. These procedures include avoiding plastic contact of children's meals[.]"[11] Consumers therefore consider exposure to microplastics to be a key purchase driver and seek to avoid the harms associated with ingesting unnecessary microplastics wherever possible.

32.   Yet another study emphasized the serious consequences of microplastic ingestion on cardiovascular systems, finding that subjects with "carotid artery plaque in which microplastics were detected had a higher risk of a composite myocardial infarction, stroke, or death from any cause."[12]

33.   Despite the clear dangers, Defendant not only actively conceals the known risks associated with microplastic exposure, but affirmatively promises the Products are "safe" for microwave and freezer use even though such uses result in the Material Danger. In reality, consumers are unknowingly exposing themselves and their families to microplastics, which have been linked to "irreversible changes in the reproductive axis and central nervous system," among other severe health consequences.[13] Defendant's false advertising thus deprives consumers of the ability to make informed choices about their health and well-being, while also harming them

[11] Amran et al., *supra* note 4.
[12] Marfella et al., *supra* note 2.
[13] Amran et al., *supra* note 4.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

monetarily as the Products do not have the "safe" attributes specifically touted by Defendant.

34.    **The Products are Intended for Daily and Constant Use.** Amplifying the Material Danger is the reality that the Products—Rubbermaid "TakeAlongs" food storage containers—are not occasional-use items but instead marketed to be used repeatedly. As essential household products, consumers use the Products every day, often multiple times in a single day, to reheat meals, store leftovers in freezers, or prepare food for their families, believing these uses are "safe" because that is what Defendant affirmatively promises. This frequent and repeated use significantly amplifies the risk posed by the toxic microplastics the Products release directly into food, over and over again, when used for the purposes Defendant promises are "safe."

35.    **Microplastics Bioaccumulate with Each Use.** This repeated exposure is especially concerning given that, due to their small size, microplastics are known to bioaccumulate.[14] Bioaccumulation results in compounding negative health effects, such as growth and reproduction issues, DNA damage due to oxidative stress, inflammation, physical stress, weakened immunity, histological damage, or even death.[15] Microplastics transmit into the human body best through digestion or oral intake.[16] From there, microplastics can leach toxic additives in the acidic environment of the stomach and cause liver inflammation.[17] For people with inflammatory bowel disease (IBS), the microplastics accumulation in feces is directly related to disease

---

[14] Yue Li et al., *Microplastics in the Human Body: A Comprehensive Review of Exposure, Distribution, Migration Mechanics, and Toxicity*, Science Direct (June 22, 2024), https://www.sciencedirect.com/science/article/abs/pii/S0048969724043638.
[15] *Id.*
[16] *Id.*
[17] Dunzhu Li et al., *Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation*, 1 NATURE FOOD 746, 746 (Oct. 19, 2020), https://doi.org/10.1038/s43016-020-00171-y.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

severity.[18] Those suffering from liver damage also show 8-fold increase in plastic contamination compared to liver samples from healthy individuals.[19] This illustrates how microplastics are directly tied to bodily harm and how the greater the amount of microplastics in one's body, the greater the harm. Thus, each instance of exposure to microplastics compounds the potential for long-term harm. For example, the quantity of microplastics in brain samples collected in 2024 was about 50% higher than in brain samples collected in 2016—demonstrating the alarming reality of bioaccumulation, and another reason why consumers seek to reduce their exposure to microplastics.[20]

36.    A September 2024 study found polypropylene microplastics in bone marrow tested, demonstrating that microplastics like those shed by Defendant's Products embed themselves deeply into the human body.[21] Another alarming study also published in September 2024 conclusively demonstrated the presence of microplastics in the human brain, with the authors cautioning that their "results should raise concern in the context of increasing prevalence of neurodegenerative diseases."[22] Ingestion of microplastics has also been linked to colon cancer, which is

---

[18] Zehua Yan et al., *Analysis of Microplastics in Human Feces Reveals a Correlation between Fecal Microplastics and Inflammatory Bowel Disease Status*, 56 ENV'T SCI. & TECH. 414, 414 (Dec. 22, 2021), https://doi.org/10.1021/acs.est.1c03924.

[19] Thomas Horvatits et al., *Microplastics Detected in Cirrhotic Liver Tissue*, The Lancet (July 11, 2022), https://www.thelancet.com/pdfs/journals/ebiom/PIIS2352-3964(22)00328-0.pdf.

[20] Douglas Main, *Microplastics Are Infiltrating Brain Tissue, Studies Show: 'There's Nowhere Left Untouched,'* The Guardian (Aug. 21, 2024), https://www.theguardian.com/environment/article/2024/aug/21/microplastics-brain-pollution-health.

[21] Xiaoli Guo et al., *Discovery and Analysis of Microplastics in Human Bone Marrow*, Science Direct (Sept. 15, 2024), https://doi.org/10.1016/j.jhazmat.2024.135266.

[22] Luís Fernando Amato-Lourenço et al., *Microplastics in the Olfactory Bulb of the Human Brain*, JAMA Network (Sep. 16, 2024), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2823787.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

on the rise in young people, and other cancers related to the gastrointestinal tract.[23] A recent study published in Nature Medicine on February 3, 2025 revealed a concerning result that brains accumulate *7–30 times greater* than the concentrations seen in livers or kidneys, and brain samples from dementia cases exhibited *even greater* microplastic presence.[24] What is even more worrying is that liver and brain samples from 2024 had significantly higher concentrations of microplastics than 2016 samples.[25] It is no wonder that consumers now report valuing product labels that disclose the risk of microplastics where applicable—and why doctors, specialists, and researchers are recommending consumers do what they can to avoid unnecessary exposure to microplastics.

37.    It is also why Defendant's false advertising is so harmful. The Products are marketed and intended for regular use, purporting to serve as essential tools for heating, freezing, and preparing food and that consumers rely on daily for these purposes because Defendant has falsely promised each of these uses is "safe." However, with each use as directed, consumers unknowingly ingest unnecessary toxic microplastics that accumulate in their bodies over time due to continuous exposure. This buildup increases the risk of serious health issues, including problems with digestion, immune function, reproductive health, and more.[26] This ongoing risk makes Defendant's misconduct even more egregious and underscores the urgent need for accountability.

//

//

---

[23] Bridget Balch, *Microplastics Are Inside Us All. What Does That Mean for Our Health?*, AAMC (June 27, 2024), https://www.aamc.org/news/microplastics-are-inside-us-all-what-does-mean-our-health.

[24] Alexander J. Nihart et al., *Bioaccumulation of Microplastics in Decedent Human Brains*, Nature Medicine (Feb. 3, 2025), https://www.nature.com/articles/s41591-024-03453-1 (emphasis added).

[25] *Id.*

[26] Li et al., *supra* note 14.

21

**B.** **The Products Are Made of Polypropylene Plastic and Are Heated and Frozen Through Ordinary Use**

38.    **Defendant Intends for Consumers to Heat and Freeze the Products.** Plaintiffs and other reasonable consumers understand that regular, everyday use of Rubbermaid TakeAlongs storage containers includes exposing them to both heat and freezing temperatures. This expectation is reinforced by Defendant's own branding and marketing, which explicitly promote the Products with the Affirmative Misrepresentations. Even the name "TakeAlongs" suggests they are meant for on-the-go use—such as bringing meals to work, school, or other settings—where reheating in a microwave or storing in a freezer is routine and anticipated. In fact, Defendant advertises on its own official webpage that "[s]erving size is great for *leftovers* and meal prep, plus pantry and craft storage."[27] Consumers reasonably rely on these Affirmative Misrepresentations and expect the Products to be safe for their advertised and intended uses. Yet, they aren't "safe" for these uses as promised, because Defendant makes the Products with polypropylene, a plastic that releases harmful microplastics in significant amounts when subjected to heat or freezing.

39.    Research shows that polypropylene products can release microplastics with values as high as 16.2 million particles per liter, and that exposure to high-temperatures, such as those encountered during microwaving, significantly increases microplastic release.[28] In fact, another study found that microwave heating caused the highest release of microplastics and nanoplastics into food compared to other usage scenarios, such as refrigeration or room-temperature storage.[29] It was found that some

---

[27] *TakeAlongs® Serving Bowl Food Storage Containers, 15.7 Cup, 2 Count*, Rubbermaid, https://www.rubbermaid.com/food-storage/everyday-use-containers/takealongs/takealongs-serving-bowl-food-storage-containers-15.7-cup-2-count/SAP_2086745.html (last visited April. 8, 2025) (emphasis added).

[28] Li et al., *supra* note 17.

[29] Kazi Albab Hussain et al., *Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

containers made of polypropylene could release as many as 4.22 million microplastic and 2.11 billion nanoplastic particles from *only one square centimeter* of plastic area *within 3 minutes* of microwave heating.[30] By advertising and selling the Products, falsely, as "Microwave Safe" and "Microwave Reheatable" without also disclosing the material risks associated with heating them, Defendant jeopardizes the health and well-being of countless consumers and misleads individuals who trust that these Products are "safe" to use for these purposes, as Defendant affirmatively represents.

40.   Studies also indicate that exposure to low temperatures can change the physical properties of plastics, making them more brittle when frozen.[31] This increased fragility presents a similar risk of microplastic release as seen with exposure to heat.[32] Research indicates that, even without external stimulation such as heating, refrigeration and room-temperature storage for ten days can cause plastic food containers made of polypropylene to release thousands of microplastics per square centimeter and millions of nanoplastics *from only square centimeter of plastic area*.[33] Given that plastic becomes brittle when frozen, it is unsurprising that cycles of cold storage followed by reheating can significantly increase the release of microplastics and nanoplastics, as these temperature fluctuations apply additional stress to the already weakened plastic containers.[34]

41.   In a 2025 study, food containers made with polypropylene just like the Products were filled with water and stored at −20 °C and 4 °C for 24 hours to simulate

*Human Health*, ACS Publications (June 21, 2023), https://pubs.acs.org/doi/10.1021/acs.est.3c01942?ref=PDF.

[30] *Id.*

[31] Yalin Chen et al., *Plastic Bottles for Chilled Carbonated Beverages as a Source of Microplastics and Nanoplastics*, Science Direct (Aug. 15, 2023), https://www.sciencedirect.com/science/article/abs/pii/S0043135423006796?via%3D ihub (citations omitted).

[32] *Id.*

[33] Hussain et al., *supra* note 29.

[34] *See* Chen, *supra* note 28.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the typical freezing and cooling conditions.[35] Following this, the plastic food containers were microwaved to simulate the heating process, and each food container released approximately 100,000 to 260,000 plastic particles.[36] The results also revealed that freezing temperatures (-20 ∘C) made plastics more brittle and fragmented, and resulted in a greater quantity of smaller plastic particles.[37] By labeling Rubbermaid TakeAlongs as "Freezer Safe" without disclosing the material risks of reheating frozen food in the microwave—despite also marketing them as "Microwave Safe" and "Microwave Reheatable"—Defendant misled consumers and disregarded their health, knowing they would reasonably use the Products for the everyday food storage and reheating purposes that Defendant falsely promised were "safe."

42. **Consumers Heat and Freeze the Products Through Ordinary Use.** Consumers routinely use Rubbermaid TakeAlongs food storage containers to heat or reheat meals in the microwave and to store hot or frozen food, trusting that Products marketed with Affirmative Misrepresentations are genuinely safe for those purposes, as affirmatively promised. However, scientific research shows that heating polypropylene containers—just like Defendant's Products—at elevated temperatures significantly increases the release of toxic microplastics directly into food. As discussed above, heating alone can significantly increase the amount of microplastic released from polypropylene containers than storage at room temperature.[38] At the same time, consumers also frequently use these containers to store food in the freezer

---

[35] Yiting Xia et al, *Subcellular Toxicity Assessments of Microplastics Released from Food Containers*, Science Direct (2025), https://www.sciencedirect.com/science/article/abs/pii/S0304389425004534.
[36] *Id.*
[37] *Id.*
[38] Hussain et al., *supra* note 29; Xin Guo et al., *Migration Testing of Microplastics from Selected Water and Food Containers by Raman Microscopy*, Science Direct (Jan. 15, 2024), https://www.sciencedirect.com/science/article/abs/pii/S0304389423020824.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and later reheat it. Defendant's own advertising encourages this use, promoting the Products for packing leftovers and freezer storage and promising they are freezer "safe."[39] Yet freezing polypropylene can exacerbate microplastic release by making it even more prone to shedding particles when reheated because low temperatures can alter the physical characteristics of plastics, and plastic becomes fragile when frozen, presenting a comparable possibility of toxic microplastics being released.[40] Despite knowing these risks, Defendant promotes its Products with Affirmative Misrepresentations of safety while providing no warnings that using the Products in the ways Defendant promises are "safe"—including freezing, heating, or both—leads to the direct ingestion of toxic microplastics. As a result, consumers remain unaware of the hidden dangers they face through routine and foreseeable use of the Products.

43.    **The Products Pose an Unreasonable Safety Hazard.** The Products are Rubbermaid TakeAlongs storage containers made of polypropylene plastic, which pose the danger of leaching microplastics when heated and frozen that can cause serious health risks such as compromising the immune system, damaging the digestive tract, and increasing the risk of various cancers. This danger is exacerbated by the Products' intended and foreseeable use, as Defendant markets the Products with the Affirmative Misrepresentations and instructs consumers to heat food in them or store leftovers in freezers without any warning about the Material Danger. The Material Danger is further compounded by the frequent, routine use of these Products in household settings. Many consumers use Rubbermaid TakeAlongs food containers daily for storing, reheating, freezing, or preparing food, thus making exposure to microplastics a recurring and persistent threat. This is particularly concerning given that microplastics bioaccumulate in the body, meaning that each exposure compounds the risk of long-term health harm. As a result, the Products pose an unreasonable

---

[39] *Supra* note 27.
[40] Chen et al., *supra* note 31.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

safety hazard due to their tendency to leach microplastics directly into food under normal and intended uses that Defendant falsely promises are "safe.

44. **The Material Danger Negates the Products' Central Function.** The central function of Defendant's Rubbermaid TakeAlongs food storage containers is to provide a safe means for storing, reheating, freezing, and preparing food. However, the Products are defective in fulfilling this function because they release harmful microplastics directly into food when used as intended, a defect that directly compromises the Products' ability to perform their intended purpose. Consumers reasonably expect that food storage products marketed with the Affirmative Misrepresentations can be used safely for heating and freezing food—because that's what the Product labels promise. Reasonable consumers would not equate "safe" with exposure to toxic materials. The safety of the Products is material and central to their intended use. Consumers do not purchase food storage products expecting them to expose themselves or their families to health risks such as the Material Danger. By releasing toxic microplastics directly into food when heated, a use Defendant promises is "safe," the Products fail to fulfill their essential function of providing a safe and reliable method for food storage and preparation. As a result, the Material Danger renders the Products defective and unsuitable for their intended and advertised purpose.

C. **<u>The Affirmative Misrepresentations and Material Omission Mislead Reasonable Consumers About the Products' Safety and Conceal the Presence of Harmful Microplastics</u>**

45. Consumers reasonably expect that the Products are safe to use as directed, particularly when they are explicitly marketed with the Affirmative Misrepresentations. These representations create a clear promise that the Products can be used safely for heating and freezing. Relying on these affirmative claims, consumers trust that using the Products to heat and freeze their food will be "safe." In truth, however, and as also affirmatively concealed by Defendant, the Products

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

release harmful microplastics directly into food when heated or frozen. The Affirmative Misrepresentations and Material Omission are thus not only deceptive, but also dangerous. Consumers routinely microwave and freeze these containers as part of normal use, because Defendant promises it is "safe" to do so, unknowingly exposing themselves and their families to health risks from ingesting contaminated food. By misrepresenting the Products as "safe" for these uses and concealing the Material Danger, Defendant denies consumers the ability to make informed decisions about their health, undermines the very trust its marketing is designed to build, and has duped consumers out of millions of dollars by failing to deliver advertised benefits.

46.    Notably, a recent study tested consumers' willingness to pay for products that disclosed the risk of microplastic contamination versus those that did not; the results revealed that consumers place substantial value on product labels that warn about the potential harm from microplastics.[41] This is consistent with a key purchase driver for consumers: avoiding unnecessary microplastics in an effort to reduce the risk of serious harm. It also highlights the materiality of Defendant's Affirmative Misrepresentations and Material Omission and the importance of disclosing the risk of Material Danger rather than falsely promising the Products are safe.[42]

47.    By affirmatively representing that the Products with the Affirmative Misrepresentations even though they cannot deliver the promised attributes, while also failing to disclose the Material Danger, Defendant has misled consumers about the safety of its Products. This unlawful deception has enabled Defendant to boost its profits at the expense of consumers' trust and their health.

//

---

[41] László Bendegúz Nagy et al., *Nudging Consumers About the Issue of Microplastics: An Experimental Auction Study on Valuation for Sustainable Food Packaging*, Nature (Aug. 16, 2024), https://www.nature.com/articles/s41598-024-69962-8.

[42] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**D.** **Plaintiffs and Reasonable Consumers Were Misled by the Affirmative Misrepresentations and Material Omission into Buying the Products**

48. **Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells the Products, each of which represents on the front-label of the Products with the Affirmative Misrepresentations, while also omitting the Material Danger.

49. **The Affirmative Misrepresentations and the Material Omission.** On the Products' labeling and packaging, Defendant affirmatively represents the Products with the Affirmative Misrepresentations to reinforce the false promise that the Products can be heated or frozen without any risk. At the same time, Defendant omits material information that the Products release dangerous microplastics directly into food when heated and frozen.

50. **Reasonable Consumer's Perception.** Defendant's Affirmative Misrepresentations, as well as its omission of the Material Danger, all lead reasonable consumers like Plaintiffs, to believe that the Products are safe to use as intended and directed. Consumers are led to believe that the Products are a safer choice for food storage and preparation and that they do not pose the risk of Material Danger.

51. **Materiality.** Defendant's Affirmative Misrepresentations, as well as its failure to disclose the Material Danger, are each separately and collectively highly material to reasonable consumers, including Plaintiffs, in deciding whether to purchase the Products. When it comes to food preparation and storage, safety is a paramount concern for consumers, particularly when products come into direct contact with the food they and their families consume. By claiming the Products are safe for microwave and freezer use, Defendant created a false impression that they pose no risk when used for these purposes. This deception is especially significant given that heating and freezing the Products—exactly as Defendant instructs and promises is "safe"—results in the release of harmful microplastics directly into food.

CLASS ACTION COMPLAINT

52.    For many consumers, the safety of household items used in the kitchen is a decisive factor in purchasing decisions. Defendant's misleading representations, coupled with its failure to disclose the Material Danger, deprived consumers of essential information needed to make informed and health-conscious choices. In doing so, Defendant not only misled consumers but also compromised their ability to protect themselves and their families from hidden, avoidable harm.

53.    **Reliance.** The Class, including Plaintiffs, reasonably relied on the Affirmative Misrepresentations in deciding to purchase the Products.

54.    **Falsity.** The Affirmative Misrepresentations and Material Omission are false and deceptive because the Products are not safe but instead leach harmful microplastics directly into food when used for the purposes Defendant promises are safe.

55.    **Consumers Lack Knowledge of Falsity.** When purchasing the Products, members of the Class, including Plaintiffs, were unaware and had no reason to believe the Affirmative Misrepresentations and Material Omission were misleading, deceptive, and unlawful. The Products' labeling and packaging led consumers to believe that the Products were safe for microwave and freezer use and free from harm—because that is what the label promises. The Products did not contain any—much less a clear, unambiguous, and conspicuously displayed statement—informing reasonable consumers that the Products posed the risk of the Material Danger. Instead, the Products affirmatively promised safety. As a result, consumers were misled into believing the Products were safe for microwave and freezer use and free from harm.

56.    **Defendant's Knowledge.** Defendant knew, or should have known, that the Affirmative Misrepresentations and Material Omission were misleading, deceptive, and unlawful at the time Defendant manufactured, marketed, advertised, labeled, and sold the Products.

    a.    **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Affirmative Misrepresentations

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and Material Omission would lead reasonable consumers into believing that the Products would be safe, as promised, for heating and freezing food rather than expose them or their families to harmful microplastics. Not only has Defendant utilized a long-standing brand strategy to promote its Products as safe and reliable for common household use, but Defendant also has an obligation under Section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. This statutory obligation required Defendant to consider whether the Affirmative Misrepresentations and Material Omission, whether in isolation or in conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are free from the Material Danger, Thus, Defendant either knew that the Affirmative Misrepresentations and the Material Omission were misleading before it marketed the Products to the Class, including Plaintiffs, or Defendant would have known that the representations and omission were deceptive had it complied with its statutory obligation to evaluate marketing claims from the reasonable consumer's perspective.

b. **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Affirmative Misrepresentations and Material Omission despite knowing that the Products did not conform to these representations. Specifically, Defendant advertised, labeled, and packaged the Products as "Microwave Safe," "Microwave Reheatable," and "Freezer Safe," while intentionally failing to inform consumers that the Products release toxic microplastics directly into food when heated or frozen. This conduct indicates that Defendant either knew the Products could not perform as advertised, or would have known had it fulfilled its statutory duty to evaluate marketing claims from the reasonable consumer's perspective. Defendant's conscious decision to withhold this critical information reflects an intentional effort to mislead consumers into believing the Products were safer than they actually are.

c. **Exclusive Knowledge.** Defendant is in a superior position to Plaintiffs and the Class to know about the Products' Material Danger. As the manufacturer of the Products, Defendant has exclusive knowledge of the dangers associated with microplastic contamination. Defendant's control over the manufacturing, design, distribution, and safety testing of the Products gives it unique insight into the presence of the Material Danger. Rather than disclosing this information, Defendant purposely

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

made the Affirmative Misrepresentations and retained its exclusive knowledge by failing to inform consumers that the Products are made from polypropylene and that polypropylene is known to release microplastics when heated and frozen. Instead, Defendant actively concealed this risk by prominently labeling the Products with the Affirmative Misrepresentations to reinforce the false impression that they could be safely heated and frozen without risk.

d. **Knowledge of Materiality.** Defendant knew or should have known that the Affirmative Misrepresentations and Material Omission were material to consumers. Manufacturers and marketers, like Defendant, are well aware that product safety is a paramount concern for consumers, particularly for products designed to hold or heat food. Here, the Affirmative Misrepresentations and Material Omission directly relate to the safety of the Products. Defendant's awareness of this materiality is evident by its decision to prominently label the Products as the "Microwave Safe," "Microwave Reheatable," and "Freezer Safe," which Defendant knew would signal to consumers that the Products were safe for heating and freezing food. Furthermore, it is common sense that information about the risk of harmful microplastic contamination would directly influence consumer purchasing decisions. Defendant knew that disclosing the risk of microplastic leaching would likely deter consumers from purchasing the Products and so it unlawfully elected instead to falsely promise safety.

e. **Defendant's Continued Deception, Despite Its Knowledge.** As the manufacturer and marketer of the Products, Defendant had exclusive control over the Affirmative Misrepresentations and Material Omission of the Material Danger on the Products' labels, packaging, and advertisements. Defendant could have easily disclosed the Material Danger or ceased promising the Products were safe for heating or freezing food. Despite its knowledge and its awareness that consumers reasonably rely on these representations and omissions when making purchasing decisions, Defendant deliberately chose to market the Products with the Affirmative Misrepresentations while omitting the associated risks. This intentional deception misled consumers into purchasing or overpaying for the Products under the false belief that they were safe for their intended use. Accordingly, Defendant knew or should have known, at all relevant times, that its conduct would mislead reasonable consumers, including Plaintiffs, into purchasing the Products based on false and deceptive

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

representations.

57. **Duty to Disclose Material Omission.** Defendant had an obligation, at all relevant times, to disclose the Material Omission—that the Products leach harmful microplastics directly into food when heated or frozen during ordinary use. This critical information, which Defendant deliberately withheld from consumers, is not only material to their purchasing decisions but also poses significant risks to consumer health and well-being. Defendant knew or should have known that reasonable consumers would interpret the Affirmative Misrepresentations as meaning the Products would be just that—"safe" to heat or freeze. The absence of any disclosure about the Material Danger furthered the affirmative deception. Defendant was also fully aware that consumers place a high value on product safety, particularly when it comes to food preparation and storage, and that this perceived safety was a key factor influencing consumers' purchasing decisions. By affirmatively promising safety, while also failing to disclose the Material Danger, Defendant misled consumers into relying on the Affirmative Misrepresentations and the Material Omission when deciding to purchase the Products.

58. **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Products or would not have paid a price premium for them, had they known that the Affirmative Misrepresentations were false and the Products posed the Material Danger and, therefore, did not possess the attributes claimed, promised, warranted, advertised, and/or represented. Defendant's Affirmative Misrepresentations and its Material Omission misled reasonable consumers into believing the Products were safe for heating or freezing food. As a result, reasonable consumers, including Plaintiffs, purchased the Products to their detriment, paying for a product that did not deliver promised attributes while also unknowingly exposing themselves and their families to the Material Danger.

//

//

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### E.    The Products are Substantially Similar

59.    As described herein, Plaintiffs purchased the Purchased Products. The additional Products identified *supra* (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

    a. **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

    b. **Brand.** All Products are sold under the same brand name: Rubbermaid TakeAlongs.

    c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

    d. **Purpose.** All of the Products are Rubbermaid TakeAlongs food storage containers intended and marketed for routine food-related uses, including storage, meal preparation, heating, microwaving, and freezing. Defendant uniformly markets the Products with identical Affirmative Misrepresentations and Material Omissions, leading reasonable consumers to believe the Products are safe for these purposes. However, Defendant fails to disclose a material fact: that during ordinary and foreseeable use, the Products release harmful microplastics into food, posing undisclosed risks to consumers.

    e. **Use.** All of the Products are designed, advertised, and expressly instructed by Defendant to be used for the same purposes: heating food, microwaving food, and storing food in freezers. Defendant's marketing materials and usage instructions actively promote these uses, encouraging consumers to expose the Products to heat and freezing conditions through representations such as "great for leftovers and meal prep, plus pantry and craft storage." Despite promoting these foreseeable and intended uses, Defendant fails to disclose a material risk: that such uses cause the Products to release harmful microplastics into food, exposing consumers to undisclosed health hazards.

    f. **Affirmative Misrepresentations and Material Omission.** All Products contain the Affirmative Misrepresentations and Material Omission on their packaging and labeling, reinforcing the false impression that they can be safely heated or frozen without risk.

33

g. **Packaging.** All Products are similarly packaged in a way that emphasizes their suitability for microwave use and/or freezer use, while omitting any warning about the Material Danger.

h. **Key Attributes.** All of Defendant's Rubbermaid TakeAlongs food storage containers are uniformly made of polypropylene, a material known to release significant amounts of microplastics into food when heated or frozen. Defendant consistently encourages consumers to microwave and freeze the Products through uniform advertising, packaging, and instructions, reinforcing the common expectation that all of the Products are safe for such ordinary and foreseeable uses.

i. **Misleading Effect.** The misleading effect of the Affirmative Misrepresentations and Material Omission is uniform across all Products—consumers overpay for Rubbermaid TakeAlongs storage containers under the mistaken belief that they are safe for heating and freezing food and pose no risk of the Material Danger.

**F.    No Adequate Remedy at Law**

60.    **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitation for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitation under the FAL and CLRA. In addition, the statutes of limitation vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitation for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

34

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

with the Affirmative Misrepresentations and Material Omission, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Affirmative Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the Affirmative Misrepresentations and Material Omission. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labels concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception

35

and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiffs and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** In addition, discovery—which has not yet been provided and/or completed—may reveal that the claims providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

//

//

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## VI.   CLASS ACTION ALLEGATIONS

61.   **Class Definition.** Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Affirmative Misrepresentations and Material Omission on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Affirmative Misrepresentations and Material Omission on the Products' labels or packaging, for purposes other than resale ("**California Subclass**").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "**Class**").

62.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

63.   **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

64.   **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the state of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

65. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b. Whether Defendant's conduct of advertising and selling the Products as safe food storage containers while labeling them with the Affirmative Misrepresentations and omitting that they leach microplastics during ordinary use constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c. Whether Defendant used deceptive representations or omission in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d. Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e. Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

f. Whether Defendant's labeling and advertising of the Products are misleading in violation of Business and Professions Code section 17500, *et seq*.;

g. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is misleading in violation of Business and Professions Code section 17500, *et seq*.;

h. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiffs and the Class paid for the Products than they actually received;

m. Whether Defendant's conduct constitutes breach of warranty;

n. Whether Plaintiffs and the Class are entitled to injunctive relief; and

o. Whether Defendant was unjustly enriched by its unlawful conduct.

66.   **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

67.   **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

68.   **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

69.   **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

70.   **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a.  The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

71. **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

72. **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

73. **Manageability.** Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII. <u>CAUSES OF ACTION</u>

### <u>COUNT ONE</u>

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

74. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    reference all allegations contained in this complaint, as though fully set forth herein.

2        75.   **California Subclass.** This cause of action is brought pursuant to Business

3    and Professions Code Section 17200, *et seq*., on behalf of Plaintiffs and a California

4    Subclass who purchased the Products within the applicable statute of limitations.

5        76.   **The UCL.** California Business & Professions Code, sections 17200, *et*

6    *seq.* (the "**UCL**") prohibits unfair competition and provides, in pertinent part, that

7    "unfair competition shall mean and include unlawful, unfair or fraudulent business

8    practices and unfair, deceptive, untrue or misleading advertising."

9        77.   **False Advertising Claims.** Defendant, in its advertising and packaging

10   of the Products, made misleading statements and fraudulent omissions regarding the

11   quality and characteristics of the Products—specifically, the Affirmative

12   Misrepresentations and Material Omission—despite the fact that the Products are not

13   safe because they leach microplastics when used as intended. Such claims and

14   omission appear on the label and packaging of the Products, which are sold at retail

15   stores and point-of-purchase displays, as well as Defendant's official website, and

16   other retailers' advertisements that have adopted Defendant's advertisements.

17       78.   **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant

18   does not have any reasonable basis for the claims about the Products made in

19   Defendant's advertising and on Defendant's packaging or labeling because the

20   Products are not "Microwave Safe," "Microwave Reheatable," or "Freezer Safe".

21   Defendant knew and knows that the Products are not free from plastic exposure

22   because they leach microplastics into the content in the food container in ordinary

23   use, though Defendant intentionally advertised and marketed the Products to deceive

24   reasonable consumers into believing that the Products are safe.

25       79.   **Exclusive Knowledge.** Defendant has exclusive knowledge of the

26   Products' danger of leaching microplastics. As the manufacturer of the Products,

27   Defendant is in a superior position to consumers, including Plaintiff, to know about

28   the risks associated with microplastic contamination. Defendant's control over the

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

manufacturing, design, distribution, and safety testing of the Products gives it unique and exclusive knowledge of the presence of the Material Danger. This superior knowledge places Defendant in a position of responsibility to disclose the risk of microplastic exposure, yet Defendant deliberately withheld this critical information from consumers while marketing the Products with the Affirmative Representations.

80. **Misleading Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are a safe feeding solution for their children.

81. **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Material Omission—namely, Plaintiffs and the California Subclass lost the purchase price for the Products they bought from Defendant.

82. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

83. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

84. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

85. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiffs and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

86. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

87. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

43

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

88. **Injury.** Defendant's action of mislabeling the Products with the Affirmative Misrepresentations and Material Omission does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

89. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

90. **No Utility.** Here, Defendant's conduct of labeling the Products with the Affirmative Misrepresentations while omitting the Material Danger has no legitimate utility and financially harms consumers. Any potential utility from Defendant's conduct is vastly outweighed by the gravity of the harm caused to consumers, who are unknowingly exposed to microplastic contamination and unjustly pay a premium for Products that fail to meet their reasonable expectations of safety.

91. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

92. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's Affirmative Misrepresentations and Material Omission constitutes an unfair business

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

practice within the meaning of California Business and Professions Code Section 17200.

93.    **Reasonably Available Alternatives.** Reasonably available alternatives existed that would have allowed Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Products with the Affirmative Misrepresentations without disclosing the risk of microplastic contamination. Alternatively, Defendant could have provided clear warnings on the Products' labels to inform consumers of the potential dangers associated with heating and freezing the Products as intended. These reasonable alternatives would have allowed Defendant to market its Products truthfully while protecting consumers from the undisclosed risks of microplastic exposure.

94.    **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

95.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order from this Court enjoining Defendant from continuing its practice of labeling the Products with the Affirmative Misrepresentations without disclosing the risk of microplastic contamination. Plaintiffs and the California Subclass request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

96.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact, have lost money, and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products, believing they were safe and free from harmful plastic exposure. Specifically, Plaintiffs and the California Subclass paid for Products they reasonably believed did not pose the risk of microplastic contamination.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Had they known the truth, Plaintiffs and the California Subclass would not have purchased the Products or would have paid substantially less for them. Accordingly, Plaintiffs and the California Subclass seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

97.  **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

98.  **Fraudulent & Material Misrepresentations and Material Omission.** Defendant employed the Affirmative Misrepresentations and Material Omission with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Affirmative Misrepresentations and Material Omission are deceptive, and Defendant knew or should have known of their deceptive nature. By affirmatively representing the Products with the Affirmative Misrepresentations while omitting the risk that the Products release harmful microplastics when heated and frozen, Defendant misleads consumers into believing the Products are safe for their intended use. Both the Affirmative Misrepresentations and Material Omission are likely to mislead reasonable consumers, as they pertain to a critical safety concern that is material to the purchasing decisions of the average, ordinary, and reasonable consumer.

99.  **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

100.  **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the Affirmative Misrepresentations and the Material Omission to their detriment in that they purchased the Products.

101.  **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct

described herein. Defendant could have refrained from labeling the Products with the Affirmative Misrepresentations and Material Omission. Alternatively, Defendant could have provided clear warnings on the Products' labels to inform consumers of the potential dangers associated with heating and freezing the Products as intended.

102. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

103. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order from this Court enjoining Defendant from continuing its practice of labeling the Products with the Affirmative Misrepresentations without disclosing the risk of microplastic contamination. Plaintiffs and the California Subclass further seek an order requiring Defendant to cease its deceptive conduct and to provide clear and conspicuous warnings about the risk of microplastic exposure when the Products are heated and frozen as intended.

104. **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for Products they reasonably believed did not pose the risk of microplastic contamination. Had they known the truth, Plaintiffs and the California Subclass would not have purchased the Products or would have paid substantially less for them. Accordingly, Plaintiffs and the California Subclass seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

105. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

106. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq* (the "**CLRA**") and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

107.  **Fraud.** Additionally, Defendant's use of the Material Omission to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

108. **Additional Violations.** Defendant's conduct in making the false representations and deceptive omission described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's omission of material facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

109. **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

110. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with Affirmative Misrepresentations without disclosing the risk of microplastic contamination. Alternatively, Defendant could have provided clear warnings on the Products' labels to inform consumers of the potential dangers associated with heating and freezing the Products as intended.

111. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

or generalized course of conduct.

112. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order from this Court enjoining Defendant from continuing its practice of labeling the Products with the Affirmative Misrepresentations without disclosing the risk of microplastic contamination. Plaintiffs and the California Subclass further seek an order requiring Defendant to cease its deceptive conduct and to provide clear and conspicuous warnings about the risk of microplastic exposure when the Products are heated and frozen as intended.

113. **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Products are free from harmful plastic exposure. Accordingly, Plaintiffs seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

114. **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

115. **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

116. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

117. **The Affirmative Misrepresentations and Material Omission**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Disseminated to the Public.** Defendant violated Section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Affirmative Misrepresentations and Material Omission disseminated to the public via the Products' labeling, packaging, and advertising. The Affirmative Misrepresentations and Material Omission were deceptive because the Products do not conform to the representations made about their safety, including the affirmative "Microwave Safe" claim, the Microwave Reheatable" claim, and the "Freezer Safer" claim. The Affirmative Misrepresentations and Material Omission were material because they are likely to, and did, mislead reasonable consumers into purchasing the Products under the false belief that they were safe for their intended use and free from the risk of microplastic contamination.

118. **Knowledge.** In making and disseminating the Affirmative Misrepresentations and the Material Omission, Defendant knew or should have known that the Affirmative Misrepresentations and the Material Omission were untrue or misleading and thereby acted in violation of California Business and Professions Code § 17500. Defendant's affirmative representation that the Products are "Microwave Safe," "Microwave Reheatable," and "Freezer Friendly" use combined with its failure to disclose the risk of microplastic contamination, constituted a deceptive practice that Defendant knew, or should have known, was false and likely to mislead reasonable consumers.

119. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' danger of leaching microplastics. As the manufacturer of the Products, Defendant is in a superior position to consumers, including Plaintiffs, to know about the risks associated with microplastic contamination. Defendant's control over the manufacturing, design, distribution, and safety testing of the Products provides it with exclusive knowledge of the presence of the Material Danger. This superior knowledge placed Defendant in a position of responsibility to disclose the risk of microplastic exposure, yet Defendant deliberately withheld this critical information while

1   affirmatively marketing the Products with the Affirmative Representations.

2       120. **Intent to sell.** Defendant's Affirmative Misrepresentations and Material

3   Omission were specifically designed to induce reasonable consumers, like Plaintiffs

4   and the California Subclass, to purchase the Products.

5       121. **Causation/Damages.** As a direct and proximate result of Defendant's

6   misconduct in violation of the FAL, Plaintiffs and members of the California Subclass

7   were harmed in the amount of the purchase price they paid for the Products. Further,

8   Plaintiffs and members of the Class have suffered and continue to suffer economic

9   losses and other damages including, but not limited to, the amounts paid for the

10  Products, and any interest that would have accrued on those monies, in an amount to

11  be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the

12  FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate

13  Plaintiffs and the California Subclass for said monies, as well as injunctive relief to

14  enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*.)**

**(*On Behalf of the California Subclass*)**

19      122. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by

20  reference all allegations contained in this complaint, as though fully set forth herein.

21      123. **California Subclass.** Plaintiffs bring this claim individually and on

22  behalf of the California Subclass who purchased the Products within the applicable

23  statute of limitations.

24      124. **CLRA Standard.** The CLRA provides that "unfair methods of

25  competition and unfair or deceptive acts or practices undertaken by any person in a

26  transaction intended to result or which results in the sale or lease of goods or services

27  to any consumer are unlawful."

28      125. **Goods/Services.** The Products are "goods," as defined by the CLRA in

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

51

CLASS ACTION COMPLAINT

California Civil Code § 1761(a).

126. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

127. **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

128. **Transactions.** The purchase of the Products by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

129. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the misleading, deceptive, and the fraudulent Affirmative Misrepresentations and Material Omission.

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

    b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

130. **Knowledge.** Defendant's uniform Affirmative Misrepresentations and Material Omission of the Material Danger regarding the Products was likely to deceive, and Defendant knew or should have known that its omission and misrepresentations were misleading.

131. **Exclusive Knowledge.** Defendant's uniform Affirmative Misrepresentations and Material Omission of the Material Danger regarding the Products was likely to deceive reasonable consumers. Defendant knew or should have known that its Affirmative Misrepresentations and Material Omission of the Material Danger was misleading and deceptive. By failing to disclose this critical safety risk, Defendant misled consumers into believing the Products were safe for their intended use.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

132. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Products.

133. **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were misled and unaware of the existence of facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

134. **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Affirmative Misrepresentations and Material Omission in deciding to purchase the Products. The Affirmative Misrepresentations and Material Omission were together a substantial factor. The Affirmative Misrepresentations and Material Omission were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

135. **Section 1782(d).** Pursuant to California Civil Code, Section 1782, Plaintiffs' counsel, acting on behalf of all members of the Class, concurrent with the filing of this Complaint mailed a statutory notice letter, via U.S. Certified Mail, return receipt requested, addressed to Defendant at their principal place of business registered with the Georgia Department of State (6655 Peachtree Dunwoody Road, Atlanta, GA, 30328) as well as to Defendant's registered agent for service of process (Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092). The letter formally notified Defendant of the violations of Section 1770 set forth herein and demanded that Defendant take corrective action to remedy the issues resulting from the conduct described herein, as well as provide notice of its intent to do so to all affected consumers. Should Defendant fail to undertake such corrective measures and issue the required notice within thirty (30) days of the date of written

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

notice, Plaintiffs will amend this Complaint to seek actual, punitive, and statutory damages, as permitted by law.

136. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiffs and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception created, facilitated, and fostered by Defendant's false and misleading advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiffs and the California Subclass. Accordingly, Plaintiffs seek an injunction pursuant to section 1780(a)(2) to enjoin Defendant from continuing its unlawful methods, acts, and practices, including its deceptive labeling of the Products with the Affirmative Misrepresentations while omitting the risk of microplastic contamination. Plaintiffs also seeks an order requiring Defendant to take corrective action necessary to dispel the public misperception created by Defendant's deceptive conduct and to provide clear and conspicuous disclosures about the risks posed by the Products.

## COUNT FOUR

### Breach of Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

137. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

138. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Products within the applicable statute of limitations.

139. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging, labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties that became part of the basis of the

bargain between Plaintiffs, members of the Class, and Defendant. Through the Products' labeling and advertising, including the Affirmative Representations— "Microwave Safe" claim, the "Microwave Reheatable" claim, the "Freezer Safe" claim, Defendant expressly warranted that the Products were safe for heating and freezing. Defendant's Material Omission of the risk that the Products release harmful microplastics when heated and frozen is inconsistent with this express warranty. As a result, Defendant's representations misled consumers into believing the Products were safe for their intended use, when in fact they posed a risk of microplastic contamination.

140. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, as a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises and affirmations of fact made on the Products' packaging, labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs, members of the Class, and Defendant. Specifically, Defendant's Affirmative Misrepresentations coupled with its Material Omission falsely conveyed that the Products were safe for their intended use. Defendant's failure to disclose this material risk violated the implied warranty of merchantability and misled consumers into believing the Products conformed to their reasonable expectations of safety and quality.

141. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Affirmative Representations. Therefore, Defendant breached its warranties about the Products and their qualities.

142. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' danger of leaching microplastics. As the manufacturer of the Products, Defendant is in a superior position to consumers, including Plaintiffs, to know about the risks associated with microplastic contamination. Defendant's control over the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

manufacturing, design, distribution, and safety testing of the Products provides it with exclusive knowledge of the presence of the Material Danger. This superior knowledge imposed a responsibility on Defendant to disclose the risk of microplastic exposure. Instead, Defendant concealed this critical information while affirmatively marketing the Products with the Affirmative Representations.

143. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Additionally, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages, including but not limited to the amounts paid for the Products and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for these losses. Plaintiffs also seek injunctive relief to enjoin Defendant's misconduct and prevent ongoing and future harm to consumers.

144. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent behavior warranting an award of punitive damages as permitted by law. Defendant's misconduct was malicious in that Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that were not, in fact, what they believed they were purchasing. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers, despite being fully aware of the probable dangerous consequences of its conduct. Rather than disclosing the risk that its Products leach harmful microplastics when heated and frozen, Defendant deliberately concealed this information and continued marketing the Products with the Affirmative Misrepresentations to intentionally mislead consumers. Defendant's misconduct was oppressive because its conduct was vile, base, and

contemptible, the kind of behavior that reasonable people would look down upon and despise. By knowingly placing consumers at risk of microplastic exposure while falsely representing the Products as safe, Defendant subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct was fraudulent because Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. Defendant's wrongful conduct, demonstrating malice, oppression, and/or fraud, was committed, authorized, adopted, approved, and/or ratified by Defendant's officers, directors, and/or managing agents. Accordingly, Plaintiffs seek an award of punitive damages against Defendant to deter such egregious misconduct and to hold Defendant accountable for its intentional and reckless actions.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

145. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

146. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Products within the applicable statute of limitations.

147. **Plaintiffs/Class Conferred a Benefit.** By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

148. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

149. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' danger to leach microplastics. Defendant, as the manufacturer of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Products, is in a superior knowledge position to consumers, including Plaintiffs, to know about the microplastics danger. Defendant's control of the manufacturing, design, distribution, and safety testing of the Products gives Defendant exclusive knowledge of the presence of the Material Danger.

150. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive omission.

151. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Additionally, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages, including but not limited to the amounts paid for the Products and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for these losses. Plaintiffs also seek injunctive relief to enjoin Defendant's misconduct and prevent ongoing and future harm to consumers.

## VIII. <u>PRAYER FOR RELIEF</u>

152. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products with the Affirmative Misrepresentations and the Material Omission in violation of law; that enjoin Defendant from continuing

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to add appropriate warning labels to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## IX.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: April 28, 2025                    **CLARKSON LAW FIRM, P.C.**

                                  */s/ Bahar Sodaify*
                                  Ryan J. Clarkson
                                  Bahar Sodaify
                                  Alan Gudino

                                  *Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT