Tammy B. Webb, SBN 227593
Russell L. Taylor, SBN 345844
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281
tbwebb@shb.com
rtaylor@shb.com

Mitch Engel, *pro hac vice* forthcoming
Kate Frerking, *pro hac vice* forthcoming
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel: 816.474.6550 | Fax: 816.421.5547
mengel@shb.com
kfrerking@shb.com

*Attorneys for Defendant*
*Rubbermaid Incorporated*

*(Additional Counsel Listed on Signature Block)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIJA ANDESILIC and PASSION LOWE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUBBERMAID INCORPORATED,<br><br>Defendant. | Case No. 2:25-cv-03736-HDV-SK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: September 11, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Hernán D. Vera |

1

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    I.     Microplastics ..........................................................................................3

    II.    Plaintiffs' Claims ...................................................................................5

LEGAL STANDARD...........................................................................................6

ARGUMENT.........................................................................................................6

    I.     Plaintiffs' claims fail because they are preempted by federal law and
         subject to the primary jurisdiction doctrine. ........................................6

         a.     Plaintiffs' claims are preempted by the FDCA. ..............7

         b.     Plaintiffs' claims are subject to the primary jurisdiction
               doctrine. .............................................................................8

    II.    Plaintiffs fail to state a claim under the UCL, FAL, or CLRA.............9

         a.     Plaintiffs' fraud-based claims fail. ...................................9

               1.     Plaintiffs have not pled their misrepresentation or
                      omissions claims with particularity. ....................10

               2.     The alleged misrepresentations cannot serve as the
                      basis for Plaintiffs' fraud-based claims................11

               3.     The alleged omissions cannot serve as the basis for
                      Plaintiffs' fraud-based claims. .............................12

               4.     Plaintiffs cannot establish Rubbermaid knew or
                      should have known of the purported defect.........16

         b.     Plaintiffs' alternative UCL theories fail. ........................17

    III.   Plaintiffs fail to state a claim for equitable relief...............................17

    IV.   Plaintiffs fail to state a claim for breach of warranty. ......................19

    V.    Plaintiffs fail to state a claim for unjust enrichment...........................20

    VI.   The Court should strike Plaintiffs' nationwide claims. ......................20

CONCLUSION....................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arroyo v. Chattem, Inc.*,
  926 F. Supp. 2d 1070 (N.D. Cal. 2012)............................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................. 6

*Baker v. Nestle S.A.*,
  No. 218CV03097VAPPJWX, 2019 WL 960204 (C.D. Cal. Jan. 3,
  2019) .......................................................................................... 1, 7, 8, 15

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) .............................................................................. 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................. 6

*Bruno v. BlueTriton Brands, Inc.*,
  No. CV 24-1563-MWF, 2024 WL 2794098 (C.D. Cal. May 6, 2024)..1, 7, 8, 15

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010)................................................................ 8

*Chebul v. Tuft & Needle, LLC*,
  No. 2:24-CV-02707-JLS-MAR, 2024 WL 5257021 (C.D. Cal. Oct. 9,
  2024) ................................................................................................................... 21

*Correia v. Johnson & Johnson Consumer Inc.*,
  No. CV 18-9918 PSG (ASX), 2019 WL 2120967 (C.D. Cal. May 9,
  2019) ................................................................................................................... 11

*Cortez v. Handi-Craft Co., Inc.*,
  No. 4:24-CV-3782-YGR, 2025 WL 1452561 (N.D. Cal. Apr. 29,
  2025) ............................................................................................................*passim*

*Daly v. Danone Waters of Am., LLC*,
  No. 24 C 2424, 2024 WL 4679086 (N.D. Ill. Nov. 5, 2024) ........................ 1, 15

*Daly v. Wonderful Co.*,
  LLC, No. 24 C 1267, 2025 WL 672913 (N.D. Ill. Mar. 3, 2025)............ 1, 14, 15

iii

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ...............................................................................18

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...............................................................................11

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) .............................................................21

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013).........................................................................21

*Hageman v. Hyundai Motor Am.*,
    No. SACV 23-01045-CJC, 2024 WL 694378 (C.D. Cal. Jan. 5, 2024) ............21

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022)................................................................9

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    No. 23-CV-03862-HSG, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024)...........13

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) .............................................................16

*Kazi Albab Hussain et al., Assessing the Release of Microplastics and
    Nanoplastics from Plastic Containers and Reusable Food Pouches:
    Implications for Human Health*, 57 ENV'T SCI. & TECH. 9782, 9784
    (2023)....................................................................................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................6, 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................18

*Miller v. Philips N. Am. LLC*,
    No. 24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025).......*passim*

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .................................................................................12

*Organic Cannabis Found., LLC v. Commissioner of Internal Revenue*,
    962 F.3d 1082 (9th Cir. 2020) ..............................................................................3

iv

*In re Plum Baby Food Litig.*,
   No. 4:21-CV-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28,
   2024), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025).....*passim*

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. CV-16-1442 PSG, 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017)...............20

*Raffaele Marfella et al., Microplastics and Nanoplastics in Atheromas
   and Cardiovascular Events*, 390 NEW ENGLAND J. MED. 900-910
   (Mar. 6, 2024) ....................................................................................................3

*Renn v. Otay Lakes Brewery, LLC*,
   2024 WL 331616 (S.D. Cal. 2024)....................................................................19

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) .......................................................................6, 10

*Shubin v. Universal Vacation Club*,
   622 F. Supp. 3d 849 (C.D. Cal. 2022), *aff'd*, No. 23-55016, 2024 WL
   1367176 (9th Cir. Apr. 1, 2024) ........................................................................19

*Slowinski v. BlueTriton Brands, Inc.*,
   744 F. Supp. 3d 867 (N.D. Ill. 2024)..........................................................*passim*

*Smith v. L.G. Elecs. USA, Inc.*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .....................................................20

*Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*,
   307 F.3d 775 (9th Cir. 2002) ...............................................................................8

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   726 F. Supp. 3d 1150 (S.D. Cal. 2024) ........................................................10, 13

*Valdez v. Harte-Hankes Direct Mktg./Fullerton, Inc.*,
   2017 WL 10592135 (C.D. Cal. Dec. 21, 2017)..................................................21

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .............................................................................11

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..............................................................4

**Statutes**

21 U.S.C. § 301 *et seq.* ................................................................................................9

v

21 U.S.C. § 343-1(a)(5) ................................................................................. 7

Cal. Bus. & Prof. Code § 17200 ................................................................. 17

**Other Authorities**

21 C.F.R. §§ 170.100(a), 170.101(a) ......................................................... 7

21 C.F.R. § 170.100 *et seq.* ....................................................................... 9

21 C.F.R. § 177.1520 ......................................................................... 4, 9, 17

Fed. R. Civ. P. 8 ........................................................................................... 6

Federal Rule of Civil Procedure 9(b) ................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................ vii, 6

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 11, 2025, at 10:00 am, or as soon thereafter as the matter may be heard before the Honorable Hernán D. Vera in Courtroom 5B of the above-entitled Court, located at First Street Courthouse, 350 West 1st Street, Los Angeles California 90012, Defendant Rubbermaid Incorporated will and hereby does move this Court for an order dismissing Plaintiff's First Amended Class Action Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for five reasons:

*First*, Plaintiffs' claims are preempted by federal law and subject to the primary jurisdiction doctrine. Any determination about the safety of the Products based on allegations related to microplastics should first be made by the Food & Drug Administration pursuant to its regulatory authority and special competence.

*Second*, Plaintiffs' claims under the UCL, FAL, or CLRA fail because Plaintiffs fail to comply with Federal Rule 9(b)'s fraud pleading standard and Plaintiffs do not allege an actionable misrepresentation or omission.

*Third*, Plaintiffs' claims for equitable relief fail because Plaintiffs do no have standing to seek injunctive relief and have failed to establish that their available legal remedies are inadequate.

*Fourth*, Plaintiffs fail to state claims for breach of express or implied warranty as they cannot plausibly allege the statements they identify as express warranties are untrue, and they have failed to allege the release of microplastics impairs ordinary use of the Products as to breach any implied warranty.

*Fifth*, Plaintiffs' unjust enrichment claim is premised on the same facts as their UCL, FAL, and CLRA claims and thus fail for the same reasons.

In addition, the Court should strike Plaintiffs' nationwide unjust enrichment and breach of warranty claims based on differences in state laws that would preclude certification of nationwide classes.

This notice is based on this notice of the motion, the supporting memorandum of points and authorities, pleadings on file in this case, and such evidence or argument as the Court may allow at the time of hearing.

Dated: July 21, 2025                   Respectfully submitted,

                                       SHOOK, HARDY & BACON L.L.P.


                                       By: */s/ Tammy B. Webb*
                                       TAMMY B. WEBB
                                       MITCH ENGEL
                                       RUSSELL L. TAYLOR
                                       KATE FRERKING

                                       *Attorneys for Defendant*
                                       *Rubbermaid Incorporated*

The undersigned, counsel of record for Defendant Rubbermaid Incorporated, certifies that prior to filing this motion, Defendant presented the issues raised in this motion to Plaintiffs' counsel and offered to meet and confer regarding the filing of this motion. Plaintiffs' counsel stated they reviewed Defendant's position and disagreed with the arguments presented.

Dated: July 21, 2025                   Respectfully submitted,

                                       SHOOK, HARDY & BACON L.L.P.

                                       By: */s/ Tammy B. Webb*

Tammy B. Webb, SBN 227593
Russell L. Taylor, SBN 345844
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281
tbwebb@shb.com
rtaylor@shb.com

Mitch Engel, *pro hac vice* forthcoming
Kate Frerking, *pro hac vice* forthcoming
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel: 816.474.6550 | Fax: 816.421.5547
mengel@shb.com
kfrerking@shb.com

*Attorneys for Defendant*
*Rubbermaid Incorporated*

*(Additional Counsel Listed on Signature Block)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIJA ANDESILIC and PASSION LOWE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUBBERMAID INCORPORATED,<br><br>Defendant. | Case No. 2:25-cv-03736-HDV-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: September 11, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Hernán D. Vera |

## <u>INTRODUCTION</u>

This case involves Plaintiffs Marija Andesilic and Passion Lowe's claim that Defendant Rubbermaid misled consumers into believing that TakeAlongs Food Storage Containers (the "Products") were "safe" by deceptively omitting that the Products release microplastics when microwaved or stored in the freezer. Plaintiffs contend these actions violate various California consumer protection statutes, breach warranties to consumers, and unjustly enrich Rubbermaid. But the foundation of Plaintiffs' claims is nothing more than undeveloped science, strained interpretations of the Products' labels, and wholly unsupported allegations. Plaintiffs have not even tested the Products at issue or alleged what level of microplastics in the Products would be unsafe.

These defects have compelled many other federal courts—including this one—to dismiss similar microplastics cases. *See, e.g.*, *Bruno v. BlueTriton Brands, Inc.*, No. CV 24-1563-MWF (JPRX), 2024 WL 2794098 (C.D. Cal. May 6, 2024) (granting motion to dismiss in case involving allegations of microplastics in bottled water); *Baker v. Nestle S.A.*, No. 218CV03097VAPPJWX, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019) (same); *Daly v. Wonderful Co.*, LLC, No. 24 C 1267, 2025 WL 672913 (N.D. Ill. Mar. 3, 2025) (same) *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867 (N.D. Ill. 2024) (same); *Daly v. Danone Waters of Am., LLC*, No. 24 C 2424, 2024 WL 4679086 (N.D. Ill. Nov. 5, 2024) (same). In fact, courts have dismissed similar microplastics claims making nearly identical allegations brought by Plaintiffs' law firm. *See Miller v. Philips N. Am. LLC*, No. 24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025) (granting motion to dismiss in case involving allegations of microplastics in baby bottles); *Cortez v. Handi-Craft Co., Inc.*, No. 4:24-CV-3782-YGR, 2025 WL 1452561 (N.D. Cal. Apr. 29, 2025) (same).

The Court should dismiss Plaintiffs' claims for five independent reasons.

***First***, Plaintiffs' claims are preempted by federal law and subject to the primary jurisdiction doctrine. The U.S. Food & Drug Administration heavily regulates food

1

contact substances—including the Products—through the Federal Food, Drug, and Cosmetic Act. Plaintiffs' claims regarding the safety of the Products would impose additional, inconsistent burdens on Rubbermaid and are thus preempted by the FDCA. Moreover, the FDA is looking at the issue of microplastics migration into food on an ongoing basis. According to the FDA's July 2024 statement, "Current scientific evidence does not demonstrate that levels of microplastics . . . detected in foods pose a risk to human health." Any determination about the safety of the Products based on allegations related to microplastics should first be made by the FDA pursuant to its regulatory authority and special competence. Plaintiffs' claims are therefore preempted and should be dismissed under the primary jurisdiction doctrine.

*Second*, Plaintiffs fail to state claims under the UCL, FAL, or CLRA. At the outset, Plaintiffs fail to plead their fraud-based claims with the particularity required by Federal Rule of Civil Procedure 9(b). Nonetheless, the alleged misrepresentations cannot serve as the basis for Plaintiffs' fraud-based claims because no reasonable consumer would believe the Products' statements indicate the Products are completely free of microplastics. Likewise, the alleged omissions cannot serve as the basis of Plaintiffs' fraud-based claims, as Rubbermaid had no duty to disclose microplastics-related information. The alleged release of microplastics does not pose an unreasonable safety hazard, nor does it impair a central function of the Products. Even so, Plaintiffs allegations fail to establish that Rubbermaid had actual knowledge of any such safety risks. Because Plaintiffs' alternative claims under the UCL's "unfair" and "unlawful" prongs rise and fall with their fraud claims, these claims fail, too.

*Third*, Plaintiffs fail to state a claim for equitable relief. They have not alleged a sufficient likelihood of future injury and therefore lack standing to seek injunctive relief.

*Fourth*, Plaintiffs fail to state claims for breach of express or implied warranty. Plaintiffs cannot plausibly allege the statements they identify as express warranties are untrue, and they have failed to allege the release of microplastics impairs ordinary use

of the Products as to breach any implied warranty.

***Fifth***, Plaintiffs fail to state a claim for unjust enrichment. Plaintiffs' unjust enrichment claim is premised on the same facts as their UCL, FAL, and CLRA claims. Because these claims should be dismissed, the unjust enrichment claim should be dismissed as well.

In addition to dismissing Plaintiffs' claims, the Court should strike Plaintiffs' nationwide unjust enrichment and breach of warranty claims based on differences in state laws that would preclude certification of nationwide classes.

## **BACKGROUND**

### I.  **Microplastics**

Microplastics are "small plastic particles less than 5 millimeters in diameter." Compl. at ¶ 28. "Some microplastics are just 1 nanometer. [ ] By point of comparison, a strand of human hair is about 80,000 nanometers wide" *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 874 (N.D. Ill. 2024).

"Microplastics are everywhere." *Id.* They have been found in every ecosystem on the planet, in the air, in personal care products, in food, in beverages, and in human and animal tissue. *See id*; *see also* "Microplastics and Nanoplastics in Foods", U.S. Food & Drug Administration (July 24, 2024) (hereinafter, "FDA Statement").[1] "They're ***inescapable***." *Slowinski*, 744 F. Supp. 3d at 874 (emphasis added).

The science surrounding microplastics—including their effect on human health—is new, evolving, and highly uncertain. *Id.* Even the materials in Plaintiffs' Complaint confirm the science is undeveloped. *See, e.g.*, *Raffaele Marfella et al.*, *Microplastics and Nanoplastics in Atheromas and Cardiovascular Events*, 390 NEW ENGLAND J. MED. 900–910 (Mar. 6, 2024) (cited in Compl. n.2) (concluding that microplastics "are emerging as a potential risk factor," but "[d]irect evidence that this

---

[1] https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods. The Court may take judicial notice of government websites. *See Organic Cannabis Found., LLC v. Commissioner of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020).

risk extends to humans is lacking"); *Nur Hanisah Amran et al.*, *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence*, 10 TOXICS 596-97 (Oct. 10, 2022) (cited in Compl. n.4) (emphasizing that "[t]he assessment of human risk exposure to [microplastics] remains a research gap due to the lack of validated methodologies, approved reference materials, and uniformity across the employed analytical process").[2]

 Contrary to the Plaintiffs' characterization of the "risks" associated with microplastics, the FDA has approved polypropylene for use in food containers. *See* 21 C.F.R. § 177.1520. Moreover, in response to the recent uptick in microplastics class actions, the FDA released a statement on microplastics and nanoplastics in food on July 24, 2024. The FDA stated:

- "There is not sufficient scientific evidence to show that microplastics and nanoplastics from plastic food packaging migrate into foods and beverages."

- "Current scientific evidence does not demonstrate that levels of microplastics or nanoplastics detected in foods pose a risk to human health."

- "[M]any of the scientific studies have used methods of variable, questionable, and/or limited accuracy and specificity."

- "[T]here are currently no standard definitions for the size of microplastics or nanoplastics. This complex variety of characteristics make the unique identification and assessment of their potential impacts challenging."

*See* FDA Statement. Much about microplastics remains unknown, including whether they are harmful at all. But what is clear is the "risks" attendant to microplastics—if any—are uncertain, including in what amount, over what period of time, and under what circumstances.

---

[2] "Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading" on a motion to dismiss if "(1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) no party questions their authenticity." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1078 (C.D. Cal. 2021) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

## II. Plaintiffs' Claims

Plaintiffs contend that among the endless sources of microplastics are goods made of polypropylene plastic, including the Products. Compl. at ¶ 2. They allege the Products—over some ***unspecified*** time and in some ***unspecified*** amount—release "harmful microplastics directly into food when microwaved or frozen." *Id.* Plaintiffs further allege consumers are exposed to "significant health risks" by ingesting microplastics when they use the Products. *Id.* at ¶ 3.

The Complaint cites no testing showing the Products actually release microplastics. It makes no allegations about the amount of microplastics the Products release or the level at which microplastics pose a safety risk. Plaintiffs simply claim microplastics are "dangerous" and pose "significant health risks" because certain studies conducted with completely different products say microplastics ***might*** present health risks. *See generally id.*

Based on these allegations, Plaintiffs contend the Products are not "safe" and they were misled into "believing [the Products] are free of risks associated with food storage and preparation as directed." *Id*. at ¶ 15, 18. Specifically, Plaintiffs allege they were deceived and misled by statements on the Products' labels, including the "Microwave Safe," "Microwave Reheatable," and "Freezer Safe" statements. *Id.* at ¶ 2, 5. Plaintiffs further claim they were misled by Rubbermaid's failure to inform consumers that the Products "leach harmful microplastics directly into food" when they are "heated in a microwave or stored in a freezer." *Id.* at ¶ 11. As a result, Plaintiffs allegedly paid a premium for the Products. *Id.* at ¶ 18.

Plaintiffs assert claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") on behalf of a putative class consisting of all California residents who purchased the Products during the last four years. *Id.* at ¶ 61. Additionally, Plaintiffs bring claims for breach of warranty and unjust enrichment on behalf of a nationwide putative class consisting of all residents of the United States "within the applicable

1  statute of limitations periods." *Id.*

2                              **LEGAL STANDARD**

3          A complaint must allege "sufficient factual matter" to state a claim that is

4  plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl.*

5  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions,

6  and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556

7  U.S. at 678–79; *Twombly*, 550 U.S. at 555. The "plausibility standard . . . asks for

8  more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

9  678. Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a

10 defendant's liability, 'it stops short of the line between possibility and plausibility of

11 entitlement to relief.'" *Id.*

12         Plaintiffs must also plead their fraud claims with particularity. *See* Fed. R. Civ.

13 P. 9(b). Failure to comply with this requirement is treated as a failure to state a claim

14 under Rule 12(b)(6). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

15 Cir. 2009) (quotations omitted). To meet the heightened pleading standard of Rule

16 9(b), a plaintiff must identify "what is false or misleading about the purportedly

17 fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

18 1133 (9th Cir. 2013).

19                              **ARGUMENT**

20 **I.      Plaintiffs' claims fail because they are preempted by federal law and**

21 **         subject to the primary jurisdiction doctrine.**

22         The FDA heavily regulates food contact substances through the FDCA.[3]  Under

23 the FDCA's premarket notification program, the FDA has determined the Products are

24 safe for their intended uses. Even if the FDA had not already made this determination,

25 questions as to whether the Products and their polypropylene components are safe or

26 whether the Products pose risks to human health by virtue of microplastics migration

27

28 _____

[3] https://www.fda.gov/food/food-ingredients-packaging/food-packaging-other-substances-come-contact-food-information-consumers.

6

into food are better suited for resolution by the FDA.

### a.    Plaintiffs' claims are preempted by the FDCA.

"State law is preempted 'to the extent of any conflict with a federal statute,' regardless of whether the conflict is express or implied." *Bruno v. BlueTriton Brands, Inc.*, No. CV 24-1563-MWF (JPRX), 2024 WL 2794098, at *2 (C.D. Cal. May 6, 2024) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "[W]hen a state law claim, however couched, would effectively require a manufacturer to include **additional or different** information on a federally approved label, it is preempted." *Id.* (quoting *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002)); *see also Baker v. Nestle S.A.*, No. 218CV03097VAPPJWX, 2019 WL 960204, at *1 (C.D. Cal. Jan. 3, 2019) ("Preemption [ ] occurs when a state law claim imposes obligations . . . that are either not imposed by federal law or that differ from federal requirements."). The FDCA provides that no state may "directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under . . . this title that is not identical" to federal requirements. 21 U.S.C. § 343-1(a)(5).

Specifically, the FDA regulates food contact substances through the FDCA's food contact notification program, which includes a "rigorous scientific safety assessment of information a manufacturer . . . submits to the FDA . . . to ensure that the intended use of a food contact substance is safe."[4]  The program requires all manufacturers wishing to market a food contact substance to submit a premarket notification ("FCN") addressing the basis for the manufacturer's determination that the food contact substance is "safe." *See* 21 C.F.R. §§ 170.100(a), 170.101(a). An effective FCN indicates the FDA has determined the product is safe "under the intended conditions of use." *See id.* at § 170.101(b).

As food contact substances, the Products are regulated by the FDA. In order for

---

[4] https://www.fda.gov/food/food-packaging-other-substances-come-contact-food-information-consumers/understanding-how-fda-regulates-substances-come-contact-food.

Rubbermaid to lawfully market the Products, the FDA—through its food contact notification program—has determined the Products are *safe* under their "intended conditions of use," including for use in the microwave and the freezer. Plaintiffs' claims allege the Products *are not safe* for these uses and would require Rubbermaid to remove certain statements the FDA has evaluated and approved. Such requirements would thus impose different, non-identical burdens than those required by the FDA and are therefore preempted. *See Bruno*, 2024 WL 2794098 at *3 (finding plaintiffs' claims preempted "to the extent Plaintiff argues that Defendant should either remove 100% from its label due to the presence of microplastics or more accurately disclose the composition of the Product" because "such a requirement would impose obligations that go beyond those provided in the FDCA"); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010) (holding plaintiffs' claims seeking an order prohibiting a statement that was misleading but not required by the FDA were preempted because such an order would impose a non-identical burden).

### b.    Plaintiffs' claims are subject to the primary jurisdiction doctrine.

The primary jurisdiction doctrine gives courts discretion to "determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002); *Baker*, 2019 WL 960204, at *3 (explaining the primary jurisdiction doctrine allows courts to dismiss a complaint "pending the resolution of an issue within the special competence of an administrative agency."). Courts weigh four factors when applying the doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

Congress—through the FDCA—has placed the issues raised in Plaintiffs'

Complaint, including the safety of the Products (food contact substances), within the jurisdiction of the FDA. 21 U.S.C. § 301 *et seq.* The FDCA—through the food contact notification program—establishes a comprehensive, uniform federal scheme for ensuring food contact substances are safe. *See* 21 C.F.R. § 170.100 *et seq.* Not only has the FDA specifically approved of the polypropylene components of the Products, *see* 21 C.F.R. § 177.1520, it has also indicated that "[c]urrent scientific evidence does not demonstrate that levels of microplastics . . . detected in foods pose a risk to human health." *See* FDA Statement. The FDA is "monitoring the research on microplastics" in accordance with its regulatory authority to protect public health and has indicated it will take regulatory action upon acquiring evidence that microplastics adversely affect human health. *See id.* Such issues require a uniform determination based on the expertise and special competence of the FDA. Put simply, Plaintiffs' claims regarding microplastics and the safety of the Products are better suited for FDA determination and should be dismissed under the primary jurisdiction doctrine.

## II. Plaintiffs fail to state a claim under the UCL, FAL, or CLRA.

One element of CLRA, FAL, and UCL claims is that consumers must have been misled by a misrepresentation or omission. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022). And a plaintiff asserting such claims "must plead all three claims with particularity as required by [Rule] 9(b)." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). Plaintiffs' fraud-based claims, as well as Plaintiffs' alternative UCL theories, fail for the reasons set forth below. Additionally, Plaintiffs' CLRA claim fails because their CLRA Demand Letter is defective.

### a. *Plaintiffs' fraud-based claims fail.*

Plaintiffs claim Rubbermaid misled consumers through affirmatively misrepresenting their Products as "Microwave Safe," "Microwave Reheatable," and "Freezer Safe," while omitting that the Products release microplastics when microwaved or stored in the freezer. *See* Compl. at ¶ 5, 11. Because Plaintiffs have not

9

pled their claims with the required particularity, cannot establish their misrepresentation-based or omission-based claims, and cannot establish Rubbermaid knew or should have known of the purported defect, their fraud-based claims under the UCL, FAL, and CLRA should be dismissed.

### 1. Plaintiffs have not pled their misrepresentation or omissions claims with particularity.

Plaintiffs must meet the heightened pleading standard of Rule 9(b) for their claims sounding in fraud, including their statutory consumer fraud claims. *See* Fed. R. Civ. P. 9(b); *Kearns*, 567 F.3d at 1124. To meet this standard, a plaintiff must identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh*, 726 F.3d at 1133. Plaintiffs have not met this standard.

Plaintiffs allege the Products "release harmful microplastics directly into food when microwaved or frozen" and microplastics generally may cause "significant health risks." Compl. at ¶¶ 2, 3. They further allege they viewed and relied on Rubbermaid's allegedly misleading statements when purchasing the Products. *Id.* at ¶¶ 24c, 25c. Such generalized assertions are insufficient, however, and fail to identify what is misleading about the Products' statements and why they are false. *Salameh*, 726 F.3d at 1133. For example, Plaintiffs allege the Products release microplastics into food when microwaved or frozen, *see* Compl. at ¶ 2, but they fail to specify the levels of microplastics released by the Products here. *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (dismissing CLRA and UCL claims because plaintiff "d[id] not plead with the required particularity what level of hexavalent chromium makes [the product] unsafe"). Moreover, Plaintiffs allege microplastics cause health risks, *see* Compl. at ¶ 3, but fail to identify the amount of microplastics alleged to cause such risks, whether the Products contain such amount, or how that amount compares to other polypropylene products. *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024) (dismissing UCL, FAL, and CLRA omissions claims where plaintiffs alleged "potential harms posed by

10

Heavy Metals as a general matter" but not "whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue").

Plaintiffs fail to plausibly allege "what is false or misleading" about the statements at issue and why the statements are false as required under Rule 9(b). Plaintiffs' fraud-based claims thus fail as a matter of pleading and should be dismissed.

### 2. The alleged misrepresentations cannot serve as the basis for Plaintiffs' fraud-based claims.

Fraud-based claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). To meet this test, a plaintiff "must show that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted). The reasonable consumer standard requires "more than a mere possibility that [a defendant's] label might conceivably be misunderstood by some few consumers"; rather, the standard "requires a ***probability*** that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 965.

The Complaint alleges consumers were deceived and misled by statements on the Products' labels, including the "Microwave Safe," "Microwave Reheatable," and "Freezer Safe" statements. *Id.* at ¶ 2, 5. Specifically, Plaintiffs allege these statements led consumers to believe the Products "are free of risks associated with food storage and preparation as directed" and will not leach "harmful substances"—i.e., microplastics—into their food when used as advertised. *Id.* at ¶¶ 15, 18, 50. But such allegations impermissibly "invent[] . . . misrepresentation[s] that Defendant did not make." *Correia v. Johnson & Johnson Consumer Inc.*, No. CV 18-9918 PSG (ASX), 2019 WL 2120967, at *4 (C.D. Cal. May 9, 2019); *see also Miller*, 2025 WL 582160, at *2 ("Representations must be analyzed according to what they actually say and not based on their implied meaning." (internal quotations and alterations omitted)). The

Products' statements are not indications the Products are entirely free of microplastics. Indeed, "[m]icroplastics are everywhere." *Slowinski*, 744 F. Supp. 3d at 874. Rather, the statements merely communicate to the reasonable consumer that the Products are "safe" to microwave, reheat, and freeze— representations the current science and the FDA support. Moreover, Plaintiffs have nowhere identified a level of microplastics in the Products that would make the Products unsafe.

Because no reasonable consumer would be misled by the Products' statements, they cannot serve as the basis for Plaintiffs' claims. *See, e.g.*, *Miller*, 2025 WL 582160, at *2 (finding the alleged misrepresentations could not serve as the basis for plaintiffs' UCL, FAL, and CLRA claims because "such a statement that the Products are free of BPAs cannot be extrapolated to imply that the Products are devoid of all harmful plastic byproducts"); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming dismissal of deceptive labeling claims, noting "a plaintiff's unreasonable assumptions about a product's label will not suffice"); *Slowinski*, 744 F. Supp. 3d at 886 (dismissing consumer fraud claims because "microplastics are in just about everything . . . When simply breathing air puts you at risk of inhaling microplastics, it's unreasonable to assume that your spring water won't have any microplastics.").

### 3. The alleged omissions cannot serve as the basis for Plaintiffs' fraud-based claims.

To plead a deceptive omission claim under the UCL, FAL, or CLRA, Plaintiffs must allege either (a) the omission is contrary to a representation actually made by Rubbermaid or (b) that Rubbermaid had a duty to disclose the information it allegedly omitted. *In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *4 (N.D. Cal. Mar. 28, 2024), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025). A defendant has a duty to disclose when either (1) "the defect at issue relates to an unreasonable safety hazard" or (2) the defect is material and "central to the product's function." *Id.*

Here, Plaintiffs do not allege the purported omission is contrary to a
representation made by Rubbermaid. And, for the reason discussed above, Plaintiffs
cannot plausibly make such a claim based on their invented meaning of the Products'
statements. Instead, Plaintiffs allege Rubbermaid had a duty to disclose "that the
Products leach harmful microplastics directly into food when heated or frozen during
ordinary use." Compl. at ¶ 57. Plaintiffs' Complaint, however, fails to establish such a
duty under either prong.

First, the purported release of microplastics does not pose "an unreasonable
safety hazard." The Complaint alleges the Products are not safe because they are made
of polypropylene plastic, which "release microplastics directly into food when
microwaved or frozen." *Id.* at ¶ 2. But such generalized claims do not suffice,
particularly absent additional allegations as to the level of microplastics in the
Products, a standard for determining the level of microplastics that is harmful, or any
corroborative testing to confirm the Products' actually contain microplastics.

In *In re Trader Joe's*, the plaintiffs alleged heavy metals in the defendant's dark
chocolate products increased the risk of various adverse health conditions. *See* 2024
WL 13199725 at *2. In dismissing the plaintiffs' UCL, FAL, and CLRA claims, the
court held that, to defeat a motion to dismiss, the complaint must allege facts "to
connect the health risks alleged ***to the levels*** of Heavy Metals in these Products and
they have to be significant enough to be . . . an unreasonable safety hazard." *Id.* at *11
(emphasis added); *see also Hayden v. Bob's Red Mill Nat. Foods, Inc*., No. 23-CV-
03862-HSG, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (dismissing CLRA
and UCL claims because the complaint failed to "explain[ ] why cadmium poses a
health threat *at the levels that it appears in the Products*").

Similarly, in *Cortez v. Handi-Craft Company, Inc.*, the plaintiffs alleged heating
the defendant's baby bottles and sippy cups released "copious amounts of
microplastics" but failed to identify a threshold at which the amount of microplastics
exposed to children become unreasonably unsafe. No. 4:24-CV-3782-YGR, 2025 WL

13

1452561, at *5 (N.D. Cal. Apr. 29, 2025). The court explained that, just like here, it was "left to guess" the amount of microplastics in the defendant's products, the health risks posed by that amount, and whether that amount is unreasonable. *Id.* On this basis, the court found the plaintiff failed to plausibly allege an unreasonable safety hazard. *Id.*

Finally, in *Daly v. Wonderful Company, LLC*, the plaintiffs alleged microplastics in Fiji Water posed an unreasonable safety hazard. No. 24 C 1267, 2025 WL 672913, at *1 (N.D. Ill. Mar. 3, 2025). The court dismissed the plaintiffs' consumer fraud claims, concluding the "plaintiffs' conclusory and unsupported allegations that Fiji Water is contaminated with microplastics . . . is insufficient to give rise to a plausible claim for relief." *Id.* at *7. In reaching this conclusion, the court emphasized that the plaintiffs failed to actually test bottles of Fiji water for the presence of microplastics, thus making their allegations "bare and [] unsupported." *Id.* at *6.

Plaintiffs' allegations fail and should be dismissed for the same reasons. The Complaint fails to allege the levels or amounts of microplastics that are unsafe or are released from the Products. The Complaint cites no testing of the Products to confirm the amount of microplastics, if any, they contain. And the studies Plaintiffs do cite confirm Plaintiffs cannot show an unreasonable safety hazard, as no established unsafe level of microplastics exists. *See, e.g.*, *Kazi Albab Hussain et al., Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health*, 57 ENV'T SCI. & TECH. 9782, 9784 (2023) (cited in Compl. n.29) ("[T]ere was no adequate toxicological information to quantify the dose-response relationship between microplastic ingestion and the risk or adverse effects in humans.").

The Complaint does nothing more than inappropriately analogize to completely different products (i.e., baby bottles) and generally allege some ***unspecified*** amount of microplastics renders the Products' unsafe. This does not suffice to create an

14

unreasonable safety hazard. *See Cortez*, 2025 WL 1452561 at *4 ("[T]he alleged unreasonable safety hazard must describe more than merely conjectural or hypothetical injuries." (internal quotations omitted)). Such shortcomings have compelled many other federal courts, including this one, to dismiss similar microplastics cases—even nearly identical cases filed by this same law firm. *See, e.g.*, *Bruno*, 2024 WL 2794098 (granting motion to dismiss in case involving allegations of microplastics in bottled water); *Baker*, 2019 WL 960204 (same); *Miller*, 2025 WL 582160 (granting motion to dismiss in case involving allegations of microplastics in baby bottles) (filed by Clarkson Law Firm, P.C.); *Cortez*, 2025 WL 1452561 (same) (filed by Clarkson Law Firm, P.C.); *Daly*, 2025 WL 672913 (microplastics in bottled water) *Slowinski*, 744 F. Supp. 3d 867 (same); *Danone Waters*, 2024 WL 4679086 (same).

Plaintiffs' claims should also be dismissed because the alleged defect is not "central to the product's function." To satisfy the "central function" prong, Plaintiffs must establish the defect renders the Products "incapable of use by any consumer." *In re Plum,* 2024 WL 1354447, at *6 (holding the presence of heavy metals was not a defect central to the function of defendant's baby food because "even if consumers find the presence of these trace contaminants to be of material concern, the Baby Food continues to function as food."). Plaintiffs cannot do so here, as the Products' function is to store food and there is no allegation the alleged release of microplastics impairs, let alone "renders . . . incapable" such function. *See Cortez*, 2025 WL 1452561 at *5 ("[H]ere, baby bottles and sippy cups continue to deliver their liquid contents despite the presence of microplastics. Plaintiffs have failed to allege a defect that renders the product incapable of use by any consumer." (internal quotations and citations omitted)).

Accordingly, the alleged omission cannot serve as the basis for Plaintiffs' claims. *See, e.g.*, *Cortez*, 2025 WL 1452561 at *7 (dismissing plaintiffs' UCL, FAL, and CLRA claims where plaintiffs failed to plead a duty to disclose the products'

1    alleged microplastics risks or defendant's actual knowledge of those risks).

2    **4.    Plaintiffs cannot establish Rubbermaid knew or should**
3    **have known of the purported defect.**

4    UCL, FAL, and CLRA claims require allegations that the defendant knew or

5    should have known of the purported defect at issue. *Cortez*, 2025 WL 1452561 at *6.

6    "Courts may infer actual knowledge from a defendant's exclusive knowledge of

7    material information related to the defect," including access to testing data or

8    customer complaints. *Id.* However, "courts are reluctant to impute actual knowledge

9    of a product defect based on vague, sweeping statements about industry research and

10    general knowledge, which are insufficient to allege that defendant knew about any

11    specific defect." *Id.* (internal quotation and alterations omitted).

12    Here, the alleged problem with the Products is they "release microplastics

13    directly into food when microwaved or frozen." Compl. at ¶ 2. Plaintiffs allege

14    Rubbermaid had "exclusive knowledge" of such dangers based on its "control over the

15    manufacturing, design, distribution, and safety testing of the Product." Compl. at ¶

16    56c. But this allegation lacks any specific, substantiating facts such as data, testing, or

17    customer complaints that might support an inference of exclusive knowledge. *See*

18    *Cortez*, 2025 WL 1452561 at *6 (finding plaintiffs' allegations that defendant had

19    exclusive knowledge based on its "control of the manufacturing, design, distribution,

20    and safety testing of the Products" were "too conclusory to satisfy Rule 9(b)"); *see*

21    *also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013).

22    ("Generalized allegations with respect to exclusive knowledge are insufficient to

23    defeat a dismissal motion.").

24    Although they cite to a myriad of studies purporting to demonstrate the dangers

25    of microplastics, Plaintiffs notably ***do not*** allege Rubbermaid was aware of any of

26    these studies. Even so, these studies at most warn of the possibility that microplastics

27    ***might*** be harmful. Rubbermaid, in reliance on the FDA's longstanding approval of

28    polypropylene for use in food containers, *see* 21 C.F.R. § 177.1520, markets its

16

Products as safe for use when microwaved or frozen. Because Plaintiffs allege no specific facts that Rubbermaid has contrary knowledge, Plaintiffs' UCL, FAL, and CLRA claims must be dismissed.

### b.    Plaintiffs' alternative UCL theories fail.

Under the UCL, a plaintiff may assert claims that the defendant's conduct was "fraudulent," "unfair," or "unlawful." Cal. Bus. & Prof. Code § 17200. "[W]here the plaintiffs' unfair prong claims overlap entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if their fraud claims also fail." *Cortez*, 2025 WL 1452561 at *7 (internal quotations omitted); *see also In re Plum*, 2024 WL 1354447, at *7 (holding that when the same conduct is alleged for all three prongs, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive") (internal quotations omitted). For the reasons set forth above, Plaintiffs' claim under the UCL's fraudulent prong fails. The "unfair" prong necessarily fails too. *See Cortez*, 2025 WL 1452561 at *8 (granting defendant's motion to dismiss on the "unfair" UCL prong because it "rises or falls" with plaintiffs' fraud-based theories).

Similarly, where the predicate violations forming the sole bases for a UCL "unlawful" claim fail, the "unlawful theory" cannot stand. *See id*. at *7 As explained above, Plaintiffs' FAL and CLRA claims must be dismissed. Plaintiffs' "unlawful" UCL claim must be dismissed as well. *See id*. (granting defendant's motion to dismiss on the "unlawful" UCL prong because it "rises or falls" with plaintiffs' FAL and CLRA claims).

### III.    Plaintiffs fail to state a claim for equitable relief.

To establish standing to bring a claim for injunctive relief, a plaintiff "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal

quotations omitted). A "previously deceived plaintiff" suing under the UCL, FAL, or CLRA must show "that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018); *see also Cortez*, 2025 WL 1452561 at *11 ("For injunctive relief . . . the threat of future injury must be actual and imminent, not conjectural or hypothetical." (internal quotations omitted)).

Plaintiffs claim a "substantial risk of future injury" because of their "reasonable but incorrect belief that the products are safe." Compl. at ¶ 26. They contend that— absent label changes—they are "likely to believe that the Products have been reformulated to address" the microplastics issue and this "mistaken belief . . . would lead Plaintiffs to purchase the Products again, exposing them to the same harm they initially experienced." *Id.* But such hypothetical allegations are implausible and should be rejected for two independent reasons.

First, the Complaint's vague allegation that Plaintiffs "desire to purchase the Products again" at some unspecified time, *id.* at ¶¶ 24g, 25g, is insufficient. As the Supreme Court has explained, "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *see also In re Plum*, 2024 WL 1354447, at *4.

Second, the repurchase conditions Plaintiffs allege cannot be realized, according to their own allegations. The foundation of Plaintiffs' claims is that all polypropylene products release microplastics when heated or frozen. *See* Compl. at ¶¶ 2, 43. According to the Complaint, the release of microplastics is an inherent characteristic of all products made of polypropylene plastic when they are heated or frozen. *See, e.g.*, *id.* at ¶ 38 ("Defendant makes the Products with polypropylene, a plastic that releases harmful microplastics in significant amounts when subjected to heat or freezing."). On this basis, there is no possibility Plaintiffs could believe the

18

Products have been reformulated to address" the issue of microplastics release. *Id.* at ¶ 26. As such, there is no likelihood the Plaintiffs would purchase the Products again and no possibility of future harm. *See, e.g., Cortez*, 2025 WL 1452561 at *12 ("[P]laintiffs alleged conditions for repurchase are contradictory—there is no plausibly alleged scenario where defendant's polypropylene products, under plaintiffs' allegations, are safe in their ordinary use . . . [n]or is there a proposed 'reformulation' of the Products in the complaint to render it safe."); *Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *1 (S.D. Cal. 2024) (no standing where plaintiff's allegation that "there is no safe level of alcohol consumption" indicated Plaintiff had not plausibly alleged a desire or intent to purchase the Products with their levels of alcohol" "even if the health and wellness representations were removed").

Plaintiffs fail to allege actual and imminent future injury meriting injunctive relief and such claims should be dismissed. *See Miller*, 2025 WL 582160 at *4 (dismissing injunctive relief claims under the UCL, FAL, and CLRA for lack of standing).

## IV.   Plaintiffs fail to state a claim for breach of warranty.

To state a claim for breach of an express warranty, Plaintiffs must allege a breach of "the exact terms of an express warranty" by identifying a "specific and unequivocal written statement" that is untrue. *Shubin v. Universal Vacation Club*, 622 F. Supp. 3d 849, 855 (C.D. Cal. 2022), *aff'd*, No. 23-55016, 2024 WL 1367176 (9th Cir. Apr. 1, 2024). The only written statements Plaintiffs' identify are the Products' representations that they are "Microwave Safe," "Microwave Reheatable," and "Freezer Safe." Compl. at ¶ 139. For the reasons explained in Section III.a.2 above, Plaintiffs cannot allege these statements are untrue. The statements warrant nothing about microplastics, let alone guarantee the products are completely free of substances that are "inescapable." *See Slowinski*, 744 F. Supp. 3d at 874. To the extent the Products created an express warranty, the warranty is that the Products are safe to microwave, reheat, and freeze—warranties science and the FDA agree are true. No

express warranty has been breached. *See Smith v. L.G. Elecs. USA, Inc.*, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014) (finding no breach of express warranty where the plaintiff's allegations did not "render[] the alleged express warranties untrue").

Plaintiffs likewise cannot state a claim for breach of an implied warranty, as they have failed to allege a defect that impairs the central function of the product, as outlined in Section III.a.3 above. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Miller*, 2025 WL 582160 at *5. The Products' ordinary purpose is to store food. While Plaintiffs allege the Products "pose an unreasonable safety hazard" because they leach microplastics, *see* Compl. at ¶ 43, there is no allegation the alleged release of microplastics renders the Products unusable by consumers. Plaintiffs have thus failed to allege a breach of implied warranty. *See Miller*, 2025 WL 582160 at *5 (finding no breach of implied warranty where plaintiffs "are alleging that the microplastics that leach from the Products make them unsafe for use. But that allegation does not render the Products unusable by consumers").

### V.    Plaintiffs fail to state a claim for unjust enrichment.

An unjust enrichment claim must be dismissed if other claims premised on the same facts are dismissed. *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. CV-16-1442 PSG (MRWx), 2017 WL 4676585, at *9 (C.D. Cal. Oct. 10, 2017); *see also Cortez*, 2025 WL 1452561 at *9 ("[P]laintiffs base their unjust enrichment and UCL, FAL, and CLRA claims on the same conduct . . . Plaintiffs' claims for unjust enrichment thus rise and fall alongside their state law claims, and defendant's motion to dismiss is granted to the same extent."). The basis for Plaintiffs' unjust enrichment claim is identical to Plaintiffs' UCL, FAL, and CLRA claims. *See* Compl. at ¶¶ 145–151. As explained above, the UCL, FAL, and CLRA claims must be dismissed. The unjust enrichment claim must therefore be dismissed as well.

### VI.    The Court should strike Plaintiffs' nationwide claims.

Under Rule 12(f) and Rule 23, a court may "strike class allegations prior to

discovery if the complaint demonstrates that a class action cannot be maintained." *Valdez v. Harte-Hankes Direct Mktg./Fullerton, Inc.*, 2017 WL 10592135, at *4 (C.D. Cal. Dec. 21, 2017). Certification of a nationwide class means each class member's claims would be governed by the law of the state where they purchased the Product and were allegedly injured. *See Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012) (determining the claims of each class member in a nationwide class "must be governed by and decided under the law of the state in which the transaction took place").

Differences in state unjust enrichment laws, as well as state warranty laws, would preclude certification of a nationwide class. This Court has repeatedly refused to certify nationwide classes where significant differences across state laws preclude satisfaction of Rule 23's requirements. *See, e.g.*, *Chebul v. Tuft & Needle, LLC*, No. 2:24-CV-02707-JLS-MAR, 2024 WL 5257021, at *5 (C.D. Cal. Oct. 9, 2024) (denying certification of nationwide unjust enrichment and breach of warranty claims); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 550 (C.D. Cal. 2013) (finding a nationwide class could not be certified under plaintiffs' UCL, breach of contract, and unjust enrichment claims); *Gianino*, 846 F. Supp. 2d at 1104 (refusing to certify nationwide consumer protection and fraud claims). There is no reason to deviate from these consistent holdings here, and this Court should strike Plaintiffs' nationwide claims accordingly. *See Hageman v. Hyundai Motor Am.*, No. SACV 23-01045-CJC (KESX), 2024 WL 694378, at *4 (C.D. Cal. Jan. 5, 2024) (striking nationwide unjust enrichment claims).

## **CONCLUSION**

For these reasons, Defendant respectfully asks the Court to dismiss Plaintiff's Complaint in its entirety, without leave to amend. Defendant alternatively asks the Court to strike Plaintiffs' nationwide unjust enrichment and breach of warranty claims.

Dated: July 21, 2025                    Respectfully submitted,

                                        SHOOK, HARDY & BACON L.L.P.

                                        By:  */s/ Tammy B. Webb*
                                        TAMMY B. WEBB
                                        MITCH ENGEL
                                        RUSSELL L. TAYLOR
                                        KATE FRERKING

                                        *Attorneys for Defendant Rubbermaid
                                        Incorporated*

## Statement of Compliance with Local Rule 11-6.1

The undersigned, counsel of record for Defendant Rubbermaid Incorporated, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 21, 2025                    Respectfully submitted,

                                        SHOOK, HARDY & BACON L.L.P.

                                        By: */s/ Tammy B. Webb*